**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**03-1823C**
**(JUDGE FUTEY)**

**XAVIER CHEMICAL COMPANY,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

# DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**MARK A. MELNICK**
**Assistant Director**

**KYLE CHADWICK**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification**
**1100 L Street, N.W., 8th Floor**
**Washington, D.C. 20530**
**Tele: (202) 305-7562**

**Attorneys for Defendant**

**OF COUNSEL:**

**CAPT. TIMOTHY J. RYAN**
**Trial Attorney**
**U.S. Army Litigation Center**
**Contract Appeals Division**
**Arlington, VA**

**October 3, 2003**

# TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF MATERIAL ALLEGATIONS AND FACTS . . . . . . . . . . . . . 3

PREFACE TO AND SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. Standards For Granting This Motion . . . . . . . . . . . . . . 7

II. Assuming An Enforceable Contract Existed Between Xavier And The Army, The Army Did Not Breach It By Not Assisting Xavier's Proposed Us Of The Railroad Tracks . . . . . . . . . . . . . . . . . . . 9

III. Assuming An Enforceable Contract Existed Between Xavier And The Army, The Army Properly Terminated It For Default . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## INDEX TO APPENDIX

November 22, 1994 Award/Contract to ICI Americas Inc. (excerpt) . . . . . . . . . . . . . . . . . 1

December 5, 1995 Modification of Army Contract with ICI Americas Inc. . . . . . . . . . . . . . . . . . 11

July 3, 1996 Letter from Charles S. Saunders of ICI Americas Inc. to Contracting Officer's Representative forwarding use proposal for plaintiff . . . . . . . . . . . . . 14

Facilities Use Agreement . . . . . . . . . . . . . . . . . . . . 25

March 30, 1998 Modification of Army Contract with ICI Americas Inc. . . . . . . . . . . . . . . . . . 47

June and July 2000 documentation of check from plaintiff to Tecumseh Professional Associates . . . . . . . . . . . . . . . . . . . . 49

August 17, 2000 letter from contracting officer to plaintiff . . . . . . . . . . . . . . . . . . . . . . 52

August 24, 2000 Memorandum of Commander's Representative to VAAP Commander re: Permits for Xavier Chemical . . . . . . . . . . . . . . . . . . 53

September 1, 2000 letter from contracting officer to plaintiff . . . . . . . . . . . . . . . . . . . . . . 54

September 14, 2000 facsimile from plaintiff to Tecumseh Professional Associates . . . . . . . . . . . . . . . . . . . . . . . . . 56

November 27, 2000 letter from Robert K. Huffman, counsel for plaintiff, to Army attorney . . . . . . . . . . . . . . . . . . . . . . . . 58

November 28, 2000 letter from plaintiff to Commander's Representative . . . . . . . . . . . . . . . . 61

November 30, 2000 memorandum of Commander's Representative to Commander re: Railroad Incident . . . . . . . . . . . . . . . . . . . . . . . . . . 62

December 1, 2000 letter from Commanding Colonel to plaintiff . . . . . . . . . . . . . . . . . . . . . . 65

December 8, 2000 letter from plaintiff to Army . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

January 16, 2001 letter from Robert K. Huffman to Army attorney . . . . . . . . . . . . . . . . . . . . 68

February 20, 2001 letter from Robert K. Huffman to Army attorney . . . . . . . . . . . . . . . . . . . . 71

June 11, 2001 letter from Commander to plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . 72

August 14, 2001 facsimile from Willis of Tennessee - Chattanooga . . . . . . . . . . . . . . . . . . . 74

August 17, 2001 letter from Commander
to plaintiff . . . . . . . . . . . . . . . . . . . . . . . . 76

# TABLE OF AUTHORITIES

## FEDERAL CASES


Page(s)

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . 8

Baggett Transp. Co. v. United States, 162 Ct. Cl. 570, 319 F.2d 864 (1963) . . . . . 12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . 7

Conley v. Gibson, 355 U.S. 41 (1957) . . . . . 7

International Verbatim Reporters, Inc. v. United States, 9 Cl. Ct. 710 (1986) . . . . . 14

Lindsay v. United States, 295 F.3d 1252 (Fed. Cir. 2002) . . . . . 7

Lisbon Contrs., Inc. v. United States, 828 F.2d 759 (Fed. Cir. 1987) . . . . . 13

McAbee Constr., Inc. v. United States, 97 F.3d 1431 (Fed. Cir. 1996) . . . . . 12

Montana v. United States, 124 F.3d 1269 (Fed. Cir. 1999) . . . . . 8

Olympus Corp. v. United States, 98 F.3d 1314 (Fed. Cir. 1996) . . . . . 8

Pension Benefit Guar. Corp. v. White Consolid. Indus., Inc., 998 F.2d 1192 (3d Cir. 1993) . . . . . 7

Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560 (Fed. Cir. 1987) . . . . . 8

Ventures Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429 (7th Cir. 1993) . . . . . 8

STATUTES

10 U.S.C. § 2667 . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . 2

41 U.S.C. § 605 . . . . . . . . . . . . . . . . . . . . . . . . . 2

MISCELLANEOUS

Public Law Institute Reference Materials (2001) . . . . . . . . . 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| XAVIER CHEMICAL COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 03-1823C<br>(Judge Futey) |

DEFENDANT'S MOTION TO DISMISS IN PART AND FOR PARTIAL SUMMARY JUDGMENT

The United States respectfully submits this motion to dismiss and for partial summary judgment in lieu of an answer, pursuant to Rules 12(a) and (b)(6) and 56 of the Court's Rules ("RCFC"). In support of this motion, the Government relies upon the complaint, the proposed findings of uncontroverted fact and appendix filed concurrently, and the following brief.

STATEMENT OF THE ISSUES

1. Whether counts I and II of the complaint should be dismissed for failure to state a claim upon which relief may be granted because – assuming, solely for purposes of this motion, that (i) the Government became a party to a facilities use subcontract between plaintiff, Xavier Chemical Company ("Xavier"), and ICI Americas Inc. ("ICI"), the operator of an inactive United States Army facility, or (ii) the Government became obligated under the Xavier-ICI subcontract because Xavier is an intended beneficiary of a 1998 close-out agreement between the Government and ICI – Xavier had no contractual right to use the Army facility as a terminal for sulfuric acid distribution.

2. Whether the Government is entitled to summary judgment upon counts III and IV of the complaint because – assuming, solely for purposes of this motion, that the terms of the Xavier-ICI facilities use subcontract are binding upon the Government – the Army properly exercised its right to terminate the contract for default when Xavier failed to pay its annual license fee (or rent) and the Army had already allowed Xavier to cure other conditions of default within the preceding 360 days.

STATEMENT OF THE CASE

Xavier seeks damages for breach and repudiation (improper termination) of an alleged contract for the commercial use of the inactive Volunteer Army Ammunition Plant ("VAAP") in Tennessee. ICI was the Army's prime contractor-operator of that facility from 1972 through 1998. Xavier alleges that the Army assumed ICI's responsibilities under Xavier's subcontract with ICI when ICI's prime contract expired in December 1998. The Army permitted Xavier to remain at the facility until August 2001.

Jurisdiction arises under the Tucker Act, 28 U.S.C. § 1491, because Xavier alleges a contract with the United States. Xavier submitted a certified claim, purportedly under the Contract Disputes Act, 41 U.S.C. § 605, in February 2003. See Compl. ¶ 42. The Army declined to act upon the claim, upon the grounds that Xavier is not a Government contractor. Id. ¶ 43.

SUMMARY OF MATERIAL ALLEGATIONS AND FACTS

For purposes of this motion only, the Government accepts the complaint's well-pleaded factual allegations as true. Xavier alleges, and we agree, that the Army entered into a prime contract with ICI, pursuant to the Armament Retooling and Manufacturing Support Act of 1992. ICI was responsible for managing the inactive Volunteer Army Ammunition Plant and, to the extent feasible, licensing the property for commercial use. Compl. ¶¶ 8-9. A 1994 award document and a 1995 modification of ICI's prime contract are reproduced in our appendix. App. 1-13.

Xavier further alleges that it entered into a subcontract with ICI, called a facilities use agreement, "to allow Xavier to operate a Sulfuric Acid Regeneration ('SAR') and related facilities on the VAAP and to engage in related operations." Compl. ¶ 10. The scope of the "related operations" authorized by Xavier's subcontract with ICI is a legal issue that is disputed in this motion, as discussed below. The default provision of Xavier's subcontract with ICI (also reproduced in our appendix) is quoted in the complaint at paragraph 33.

ICI's prime contract expired on December 31, 1998 and was not renewed. See id. ¶¶ 14, 17. In a letter dated the previous day, the Army informed Xavier, among other things, that the Army would treat Xavier's license to use the facility as continuing upon a month-to-month basis, "provided [Xavier was] not in default of [its] current agreement [with ICI]." Id. ¶ 17.

Xavier alleges that, in a close-out agreement with ICI dated December 28, 1998, the Army agreed to assume ICI's duties under Xavier's subcontract. Id. ¶ 16. As discussed below, the Court need not reach that allegation.

In August 2000, according to the complaint, Xavier began requesting "that certain railroad facilities [at the VAAP] be cleared so that Xavier could inspect, repair, and begin using the railway." Id. ¶ 22. Counts I and II of the complaint are based upon Xavier's allegations that the railroad tracks were not made available, and that the Army stated in February 2001 that it "would not permit Xavier to conduct either sulfuric acid terminalling or manufacturing at the SAR plant 'until Xavier ha[d] entered into a Corps of Engineers lease under 10 U.S.C. § 2667.'" Id. ¶¶ 22-31, 45, 48.[1]

Xavier insisted – as it had since the expiration of ICI's prime contract – that no lease was necessary; that Xavier already had a contract with the Army; and that it was not required to meet the regulatory and statutory conditions cited by the Army before engaging its proposed activities at the site. See id. ¶ 32. Xavier alleges that the Army's refusal to facilitate Xavier's use of the railway was a breach of contract that harmed Xavier. Id. ¶¶ 44-49.

---

[1] Section 2667 authorizes the Secretary of Defense to lease unused but non-excess military property "upon such terms as he considers will promote the national defense or be in the public interest," subject to certain limitations.

Our factual statement in support of our motion for summary judgment upon counts III and IV establishes further that, assuming the facilities use subcontract between Xavier and ICI remained in effect as between Xavier and the Government, Xavier was in default of that agreement from August 1, 2000, when it failed to timely pay its annual license fee, until September 14, 2000, when Xavier cured that default by paying the overdue fee with interest. Def. PFF ¶ 5.

In addition, in both August 2000 and August 2001, Xavier parked railcars containing sulfuric acid at the facility without the Army's permission, id. ¶ 6, and in August 2001, Xavier failed to pay the premium for the insurance policy required by the facilities use agreement, if the latter was still in effect. Id. ¶ 7. We demonstrate below that those additional defaults independently justified the termination under the terms of the alleged contract between Xavier and the Army.

On August 17, 2001, after Xavier once again failed to pay its annual fee on time, the Army terminated Xavier's right to enter and use the VAAP. Compl. ¶¶ 35-36.

## PREFACE TO AND SUMMARY OF THE ARGUMENT

Although the Government expressly denies Xavier's allegation that the Army "stepped into ICI's shoes" as a matter of fact or law with respect to Xavier's subcontract to conduct business at the VAAP, see Compl. 1, the Court need not reach that issue to resolve this case. Solely for purposes of this motion, we assume

the asserted contractual nexus exists.[2] We demonstrate below that Xavier cannot recover even under that assumption.

Counts I and II, which complain of the Army's refusal to allow Xavier to use VAAP railroad tracks to support the operation of a sulfuric acid distribution terminal, fail, even assuming privity of contract, because Xavier's facilities use agreement with ICI allows Xavier only to operate an acid production "plant" and expressly reserves the prime contractor's right to refuse Xavier permission to "use" hazardous substances, or "bring" them to the site, for other purposes.

Counts III and IV, alleging improper termination for default, can also be readily resolved without the necessity to decide whether the Government became bound by the Xavier-ICI facilities use subcontract. That agreement permits termination for a default by Xavier, without the issuance of a cure notice, when Xavier has been afforded an opportunity to cure a default within the preceding 360 days. Xavier had been in default of its payment obligations within 360 days of its failure to pay the fee

---

[2] The allegation underlying counts I and III that Xavier "attorned" to a contract (which is not a lease) with the Army, however, fundamentally misconstrues attornment and is facially unsupportable. See, e.g., PLI Ref., Commercial Ground Leases § 12.5.2 (2001) ("The landowner is not a party to [a] sublease and therefore is not bound by its terms to recognize [a] subtenant. This [attornment] clause in effect makes it optional with the landlord to recognize . . . subtenants the landlord wants to retain . . . ."). We need not brief that issue because Xavier colorably alleges it is an intended beneficiary of the Army's December 1998 close-out agreement with ICI, and there are alternative grounds for resolving the case.

in August 2001. Xavier had, moreover, defaulted upon the terms of the subcontract in three other instances, one of which the Army allowed it to cure, within that same 360-day period. Thus, if the Xavier-ICI agreement bound the Army, the Army was entitled to terminate it for default in August 2001 without issuing a cure notice or providing yet another opportunity for cure.

## ARGUMENT

### I. Standards For Granting This Motion

Counts should be dismissed for failure to state a claim "when the facts asserted by the claimant do not entitle him to a legal remedy . . . accept[ing] all well-pleaded factual allegations as true and draw[ing] all reasonable inferences in the claimant's favor." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002); accord Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Contracts and other documents cited in the complaint may be consulted for this purpose whether or not they are attached to the complaint. E.g., Pension Benefit Guar. Corp. v. White Consolid. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) ("[D]efendant may introduce certain pertinent documents if the plaintiff failed to do so.").

Like dismissal pursuant to Rule 12, summary judgment is "designed 'to ensure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). It should be

granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." RCFC 56(c); accord Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1999).

A factual issue is "material" only if it could affect the outcome in light of the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "genuine" factual dispute exists only if a reasonable trier of fact could find for the nonmoving party. Id. The movant need not "produce evidence" of the absence of factual disputes; it need only "point[] out" that the record does not support the other party's case. Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting Celotex, 477 U.S. at 325).

Issues of contract interpretation may be resolved on summary judgment. See Olympus Corp. v. United States, 98 F.3d 1314, 1316 (Fed. Cir. 1996).

## II. Assuming An Enforceable Contract Existed Between Xavier And The Army, The Army Did Not Breach It By Not Assisting Xavier's Proposed Use Of The Railroad Tracks

As previously noted, the gravamen of counts I and II of the complaint is that the Army breached a contract and injured Xavier by not arranging to clear railways at the VAAP in 2000 and 2001. Compl. ¶¶ 21-31, 44-49. Xavier asked to use the railroad tracks to conduct "terminalling and transfer activities," during which "Xavier [would] transport sulfuric acid by railcar to a terminalling facility located in the . . . plant area, the acid

[would] be transferred by hoses from the railcars to trucks, and the trucks [would] transport the acid off-site to Xavier's customers." App. 59; see also App. 67.

Conspicuously, in its complaint, Xavier cites no specific term of its agreement with ICI that allegedly entitled Xavier to operate a distribution terminal for sulfuric acid transported by Xavier to the VAAP from elsewhere. That omission is no surprise: No such contract terms exist.

The Xavier-ICI subcontract granted Xavier "a License to use certain facilities at VAAP . . . as a sulfuric acid plant." App. 25 (emphasis added). The agreement further provides, among other things, that Xavier "shall not treat, dispose, bring, use or store at VAAP any Hazardous Substances (as defined by 42 U.S.C., Section 9601(14) and implementing regulations . . .)" without "ICI's written consent," which ICI agreed not to withhold unreasonably, "provided such Hazardous Substances are required for the operation [or] maintenance of the Facilities." App. 8 (emphasis added).

Appendix A of the Xavier-ICI subcontract specifies that the license to use the property for an acid "plant" would include

> conversion of the [existing] Sulfuric Acid Plant from a single absorption process to a double absorption process, conversion of the Sulfuric Acid Plant from upgrading weak sulfuric acid to full strength . . . to a process whereby various grades of sulfuric acid are manufactured primarily from the oxidation of elemental sulfur, and conversion

> of the Facilities to meet current technological and environmental standards.

App. 39-40. Importantly, neither Appendix A nor any other part of the agreement between ICI and Xavier indicates that Xavier may import saleable sulfuric acid from offsite to pump into to trucks, or for any other purposes.

Xavier's subcontract with ICI was, moreover, at its inception at least, subordinate to ICI's prime contract with the Army. See App. 25. ICI's prime contract expressly provided, among other things, that subcontractors could not begin commercial activities at the VAAP until their planned activities were reviewed and fully approved by the Army. App. 12, 15-24. Xavier was also responsible for obtaining any required regulatory permits and licenses. App. 21.

Finally, Appendix A of Xavier's facilities use subcontract itemizes the specific facilities ("and the land immediately adjoining same") included within Xavier's license. App. 38. The grant included "the non-exclusive use of the railroad facilities at VAAP . . . . The SUBCONTRACTOR [Xavier] shall have the right to negotiate directly with the railroad(s) in order to establish the SUBCONTRACTOR'S necessary rail service contracts . . . ." App. 39 (emphasis added). Importantly, neither Appendix A nor any other part of the facilities use agreement indicates that Xavier may use the railroad tracks to carry wholesale acid

brought from offsite, or that ICI or the Government must intercede with the railroad operators upon Xavier's behalf.

There is, in short, nothing in the language of Xavier's subcontract with ICI that could obligate ICI, or the Government, had it "stepped into ICI's shoes," to allow Xavier to "terminal and transfer" sulfuric acid that Xavier did not produce at the VAAP. To the contrary, ICI agreed only to allow Xavier to operate an acid regeneration "plant" — a production facility, not a distribution hub. Xavier, in turn, expressly agreed that the prime contractor could refuse to allow Xavier to "bring, use[,] or store" acid (or any other hazardous substance) unless the latter was "required" for Xavier's production plant. App. 32.

Assuming the Army became bound by ICI's subcontract with Xavier, therefore, the Army's refusal to make the rail lines available for Xavier to operate a train-to-truck sulfuric acid distribution terminal was not a breach. (If Xavier also complains that it was not allowed to begin acid "manufacturing," see Compl. ¶ 31, the assertion is immaterial because Xavier does not allege, nor is it true, that it was actively preparing for acid production or had obtained regulatory approval.) At a minimum, there was no breach because the subcontract gave Xavier no right to "bring" acid to the VAAP that it did not "require[]" for its own (long-promised) production activities.

Consistent with our reading, Xavier has never even asserted that the express terms of its facilities use agreement with ICI

authorize any "terminalling" or "transferring" of sulfuric acid. And, absent a material ambiguity, parol evidence may not be cited to vary or supplement the language of that agreement. McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996); Baggett Transp. Co. v. United States, 162 Ct. Cl. 570, 574, 319 F.2d 864, 868 (1963) ("There is no ambiguity here. Consequently, parol evidence will not be considered."). By its plain terms, Xavier's agreement with ICI merely anticipated the operation of an acid "plant" and granted Xavier no express or implied rights to bring acid to the VAAP for purposes unrelated to production. Xavier's counts I and II should, therefore, be dismissed for failure to state a contract claim upon which the Court may grant relief.

## III. Assuming An Enforceable Contract Existed Between Xavier And The Army, The Army Properly Terminated It For Default

Counts III and IV of the complaint rest upon Xavier's allegations that the Army's "termination of Xavier's rights in August 2001" was "improper." Compl. ¶¶ 51, 54. The party invoking a default provision typically bears the burden to establish valid grounds for a termination. Lisbon Contrs., Inc. v. United States, 828 F.2d 759, 765 (Fed. Cir. 1987). As quoted in paragraph 33 of the complaint, Xavier's subcontract with ICI permits termination for default if Xavier fails to make annual payments or is "in default under any other condition of this Agreement . . . ." App. 34. The subcontract entitles Xavier to

written notice of default and a 30-day cure period, but "only one such written notice and only one such opportunity to cure shall be allowed during any 360[-]day period . . . ." Id.

Xavier failed to pay its annual license fee as required on August 1, 2001, see App. 41, approximately 320 days after Xavier had cured its previous payment default on September 14, 2000. Def. PFF 5, 8. Because Xavier had used a cure period within the previous 360 days, it was not entitled to a second cure notice. Thus, assuming, for this motion only, that privity of contract existed between Xavier and the Army, the Army was entitled to terminate the facilities use agreement for default without further notice, as it did on August 17, 2001. See Compl. ¶ 36.

Xavier appears to interpret the provision allowing one cure opportunity "during any 360 day period" to mean the 360 days is measured from the date of a cure notice, rather than from the date the default is cured. See id. ¶ 38. That is inconsistent with the plain language, which provides for one "opportunity to cure," i.e., one sufferance of an uncured default, "during any 360 day period." Xavier's opportunity to cure its August 2000 payment default extended until September 14, 2000, considerably less than 360 days before Xavier missed its next payment. Measuring the 360 days from the date of the first cure notice rather than from the date of cure is also implausible, because it would entitle Xavier to a cure notice whenever 360 days elapsed between the starting dates of two successive defaults, even if

the prime contractor chose to grant Xavier an extended period, such as 60 or 120 days, to cure its first default.

Nor was non-payment of its fee Xavier's only default in 2000 and 2001, assuming the facilities use subcontract was in effect. The default provision of that agreement arguably provides for one cure period per 360 days for a payment default, and one cure period per 360 days for a default of "any other condition." App. 34. If so, Xavier defaulted upon two "other" contract conditions within the 360 days preceding the termination for default, and those defaults independently support the termination.

Specifically, the Army provided written notice on December 1, 2000 that, by bringing railcars containing sulfuric acid to the VAAP, Xavier had "violate[d] 10 U.S. Code 2692 and create[d] a potential environmental and safety hazard." App. 65.[3] The Army directed that the cars be removed. App. 65-66; see Def. PFF ¶ 6. The Army's letter constructively advised Xavier that it was in material violation of the safety provisions of the facilities use agreement, App. 29, 32, if still binding. Accordingly, that letter operated as a cure notice. See International Verbatim Reporters, Inc. v. United States, 9 Cl. Ct. 710, 721 (1986).

[3] Section 2692 generally prohibits the private "storage, treatment, or disposal" of hazardous materials at military installations. As noted above, the Xavier-ICI subcontract was even broader and also restricted Xavier's right to "use" acid or "bring" it to the VAAP. App. 32.

In August 2001 - less than 250 days after the Army's December 2000 notice regarding the railcars containing sulfuric acid - Xavier failed to pay for the insurance coverage required by paragraph 8.a(5) of the facilities use agreement. Def. PFF ¶ 7; see App. 30, 77. That constituted yet another material default, if the Xavier-ICI agreement was still in effect. The Army also discovered in August 2001, days before the termination, that Xavier had again parked acid-carrying railcars without permission. App. 77. Because those two additional, distinct defaults occurred (or were discovered) less than 360 days after the Army's December 2000 cure notice regarding the railroad cars, they independently justified immediate termination for default.

Accordingly, owing either to Xavier's two fee delinquencies within 360 days, or to Xavier's three "other defaults" during the same period, or to the combination, assuming the existence of a contract, the Army's August 2001 termination for default was procedurally and substantively proper under the terms of the Xavier-ICI subcontract, and the Government is entitled to judgment upon counts III and IV.

## CONCLUSION

For the reasons above, we respectfully request the Court to dismiss counts I and II, enter summary judgment for defendant upon counts III and IV, and dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

CAPT. TIMOTHY J. RYAN
Trial Attorney
U.S. Army Litigation Center
Contract Appeals Division
Arlington, VA

October 3, 2003