IN THE UNITED STATES COURT OF FEDERAL CLAIMS

03-1823C
(JUDGE FUTEY)

XAVIER CHEMICAL COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# APPENDIX TO DEFENDANT'S MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT - VOLUME I

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562

Attorneys for Defendant

OF COUNSEL:

CAPT. TIMOTHY J. RYAN
Trial Attorney
U.S. Army Litigation Center
Contract Appeals Division
Arlington, VA

October 3, 2003

# INDEX TO DEFENDANT'S APPENDIX


November 22, 1994 Award/Contract to ICI Americas Inc. (excerpt) . . . . . . . . . . . . . . . . 1

December 5, 1995 Modification of Army Contract with ICI Americas Inc. . . . . . . . . . . . . . . . . 11

July 3, 1996 Letter from Charles S. Saunders of ICI Americas Inc. to Contracting Officer's Representative forwarding use proposal for plaintiff . . . . . . . . . . . . 14

Facilities Use Agreement . . . . . . . . . . . . . . . . . . 25

March 30, 1998 Modification of Army Contract with ICI Americas Inc. . . . . . . . . . . . . . . . . 47

June and July 2000 documentation of check from plaintiff to Tecumseh Professional Associates . . . . . . . . . . . . . . . . . . 49

August 17, 2000 letter from contracting officer to plaintiff . . . . . . . . . . . . . . . . . . . . 52

August 24, 2000 Memorandum of Commander's Representative to VAAP Commander re: Permits for Xavier Chemical . . . . . . . . . . . . . . . . 53

September 1, 2000 letter from contracting officer to plaintiff . . . . . . . . . . . . . . . . . . . . 54

September 14, 2000 facsimile from plaintiff to Tecumseh Professional Associates . . . . . . . . . . . . . . . . . . . . . . . . 56

November 27, 2000 letter from Robert K. Huffman, counsel for plaintiff, to Army attorney . . . . . . . . . . . . . . . . . . . . . . 58

November 28, 2000 letter from plaintiff to Commander's Representative . . . . . . . . . . . . . . . 61

November 30, 2000 memorandum of Commander's Representative to Commander re: Railroad Incident . . . . . . . . . . . . . . . . . . . . . . . . 62

December 1, 2000 letter from Commanding Colonel to plaintiff . . . . . . . . . . . . . . . . . . . . 65

December 8, 2000 letter from plaintiff to Army . . . . . . . . . . . . . . . . . . . . . . . . . 66

January 16, 2001 letter from Robert K. Huffman to Army attorney . . . . . . . . . . . . . . . . . . . . 68

February 20, 2001 letter from Robert K. Huffman to Army attorney . . . . . . . . . . . . . . . . . . . . 71

June 11, 2001 letter from Commander to plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . 72

August 14, 2001 facsimile from Willis of Tennessee - Chattanooga . . . . . . . . . . . . . . . . . . . 74

August 17, 2001 letter from Commander to plaintiff . . . . . . . . . . . . . . . . . . . . . . . 76

# AWARD/CONTRACT

1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) ▷ RATING DOA6 — PAGE 1 OF 18 PAGES

2. CONTRACT (Proc. Inst. Ident.) NO. DAAA09-94-E-0017

3. EFFECTIVE DATE 22 NOV 1994

4. REQUISITION/PURCHASE REQUEST/PROJECT NO.

5. ISSUED BY — CODE W52P1J
HQ AMCCOM
AMSMC-PAI-G
MAJ WAYNE W JOHNSON /309-782-4720
ROCK ISLAND IL 61299-6000

6. ADMINISTERED BY (If other than Item 5) — CODE W52P1J
SCD C PAS NONE ADP PT W52H09

7. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State and ZIP Code)
ICI AMERICAS INC
RT 202 AND NEW MURPHY RD
WILMINGTON DE 19897 A
CODE 0VX27 FACILITY CODE

8. DELIVERY
☐ FOB ORIGIN ☐ OTHER (See Below) SEE SCHEDULE

9. DISCOUNT FOR PROMPT PAYMENT

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN: ▷ ITEM 12

11. SHIP TO/MARK FOR — CODE
SEE SCHEDULE

12. PAYMENT WILL BE MADE BY — CODE W52H1C
FINANCE AND ACCOUNTING OFFICER
ATTN DFAS-IN/EM-BH-FEV
(BLDG 390)
ROCK ISLAND ARSENAL
ROCK ISLAND IL 61299-5000

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
[X] 10 U.S.C. 2304(c)( 3A ) ☐ 41 U.S.C. 253(c)( )

14. ACCOUNTING AND APPROPRIATION DATA
SEE SECTION G OF THE SCHEDULE

| 15A. ITEM NO | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | CONTRACT TYPE: NO COST | | | | |

15G. TOTAL AMOUNT OF CONTRACT ▷ $ .00

7

16. TABLE OF CONTENTS

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I — THE SCHEDULE | | | | PART II — CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | 1 | X | I | CONTRACT CLAUSES | 14 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 6 | | | PART III — LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 9 | X | J | LIST OF ATTACHMENTS | 18 |
| | D | PACKAGING AND MARKING | | | | PART IV — REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 10 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| | F | DELIVERIES OR PERFORMANCE | | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 11 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 12 | | M | EVALUATION FACTORS FOR AWARD | |

CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

17. [X] CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return 01 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number ______, including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

19A. NAME AND TITLE OF SIGNER (Type or print)
C. S. Saunders, Vice President

19B. NAME OF CONTRACTOR
BY [signature] (Signature of person authorized to sign)

19C. DATE SIGNED 22 NOV 1994

20A. NAME OF CONTRACTING OFFICER
JOHN C. KADDATZ
CONTRACTING OFFICER

20B. UNITED STATES OF AMERICA
BY [signature] (Signature of Contracting Officer)

20C. DATE SIGNED 22 NOV 1994

NSN 7540-01-152-8069
PREVIOUS EDITIONS UNUSABLE

STANDARD FORM 26 (REV. 4-85)
Prescribed by GSA FAR (48 CFR) 53.214(a)

TION A - SUPPLEMENTAL INFORMATION

HQ, AMC-LEVEL PROTEST PROGRAM
AMC (JAN 1991)

a. Policy: A protest to an AMC forum is a "protest to the agency," within the meaning of FAR 33.103. The HQ, AMC-Level otest Program is intended to encourage an interested party to seek resolution of its concerns within AMC, rather than filing a otest with the General Accounting Office (GAO), General Services Administration Board of Contract Appeals (GSBCA), or other ternal forum.

b. Agency Protest: An AMC protest may be filed with either, but not both:

(1) the contracting officer designated in the solicitation for resolution of protests, or,

(2) HQ, AMC at the address designated in the solicitation.

c. Election of Forum: After an interested party protests an AMC procurement to HQ, AMC and while that protest is pending, the otestor agrees not to file a protest with the GAO, GSBCA or other external forum. If the protestor has filed a protest with the ), GSBCA or other external forum, HQ, AMC-level protest procedures may not be used and any protest that has been filed will be smissed.

d. Protest Decision Authority: The AMC Command Counsel is designated as the HQ, AMC Protest Decision Authority. In the sence of the Command Counsel, the Deputy Command Counsel is designated as the HQ, AMC Protest Decision Authority.

e. Time for Filing a Protest: HQ, AMC protest shall be filed in accordance with the timeframes set out in FAR 33.103(b)(2).

f. Form of Protest: HQ, AMC protest shall include the protestor's name, address and telephone number, including facsimile mber; the solicitation or contract number, identity of the procuring activity and the contracting officer's name; a statement of l legal and factual grounds for protest, including copies of all relevant documents; a request for ruling; and a request for lief. All protests must be signed by an authorized representative of the protestor.

g. Processing of HQ, AMC-Level Protests:

(1) Within 10 working days after the protest is filed, the Contracting Officer, with the assistance of legal counsel, all file with the HQ, AMC Office of Command Counsel, ATTN: AMCCC-BP, an administrative report responsive to the protest. Reports all be sent by facsimile, over-night mail or hand-delivered, to ensure timely receipt.

(2) The HQ, AMC Protest Decision Authority will issue a written decision within 20 working days after the filing of the otest regardless of whether the administrative report is timely filed.

(3) The written decision will be binding on the Army Materiel Command and its procuring activities.

(4) For good cause shown, the HQ, AMC Protest Decision Authority may grant extensions of time for filing of the ministrative report and for the issuance of the written decision. When such an extension is granted, the protestor and all terested parties shall be notified within 1 working day of the decision to grant the extension.

h. Effect of Protest on Award and Performance:

(1) Protests before Award: When a protest is filed with HQ, AMC prior to award, a contract may not be awarded unless thorized by the Deputy Chief of Staff (DCS) for Procurement, HQ, AMC, in accordance with FAR 33.103(a)(2).

(2)Protests after Award: When a protest is filed with HQ, AMC within 10 calendar days after award, the Contracting Officer shall suspend performance. HQ, AMC DCS for Procurement may authorize contract performance, notwithstanding the protest, upon a written finding that:

(i) contract performance will be in the best interests of the United States; or

(ii) urgent and compelling circumstances that significantly affect the interests of the United States will not permit waiting for a decision from the HQ, AMC Protest Decision Authority.

(i) Remedies: The HQ, AMC Protest Decision Authority may grant any one or combination of the following remedies:

(1) terminate the contract;

(2) re-compete the requirement;

(3) issue a new solicitation;

(4) refrain from exercising options under the contract;

(5) award a contract consistent with statute and regulation;

(6) such other remedies as HQ, AMC Protest Decision Authority determines necessary to correct a defect.

(End of clause)

M7010)

A-2 NOTICE TO OFFERORS - USE OF CLASS I OZONE-DEPLETING SUBSTANCES
HQ, DA (JUL 1993)

(a) In accordance with Section 326 of P.L. 102-484, the Government is prohibited from awarding any contract which includes a specification or standard that requires the use of a Class I ozone-depleting substance (ODS) identified in Section 602(a) of the Clean Air Act, 42 U.S.C. 7671a(a), or that can be met only through the use of such a substance unless such use has been approved, on an individual basis, by a senior acquisition official who determines that there is no suitable substitute available.

(b) To comply with this statute, the Government has conducted a best efforts screening of the specifications and standards associated with this acquisition to determine whether they contain any ODS requirements. To the extent that ODS requirements were revealed by this review they are identified in Section C with the disposition determined in each case.

(c) If offerors possess any special knowledge about any other ODSs required directly or indirectly at any level of contract performance, the U.S. Army would appreciate if such information was surfaced to the Contracting Officer for approporate action. To preclude delay to the procurement, offerors should provide any information in accordance with FAR 52.214-6 or 52.215-14 as soon as possible after release of the solicitation and prior to the submission of offers to the extent practicable. It should be understood that there is no obligation on offerors to comply with this request and that no compensation can be provided for doing so.

(End of clause)

A7020)

A-3

PREAMBLE

DAAA09-94-E-0017

BETWEEN

HEADQUARTERS, US ARMY ARMAMENT,
MUNITIONS AND CHEMICAL COMMAND
(ON BEHALF OF THE INDUSTRIAL OPERATIONS COMMAND)
ROCK ISLAND, ILLINOIS 61299-6000

AND

IC AMERICAS INC
WILMINGTON, DELAWARE 19897

FOR THE OPERATION AND MAINTENANCE OF

VOLUNTEER ARMY AMMUNTION PLANT
CHATTANOOGA, TENNESSEE 37422-2607

WHEREAS, the Department of the Army, US Army Armament, Munitions and Chemical Command (AMCCOM), on behalf of the Industrial Operations Command (IOC), Rock Island, Illinois (hereinafter referred to as the Government) and ICI Americas Incorporated, Operating Contractor of Volunteer Army Ammunition Plant, Chattanooga, Tennessee(hereinafter referred to as the Contractor) have previously entered into a Contract, designated as Contract No. DAAA09-86-Z-0007 for the protection, operation, and maintenance of the facilities at Volunteer AAP; and

WHEREAS, the Government and the Contractor desire to close out said Contract and replace it with a new instrument, in order to facilitate administration, reduce record-keeping and to comply with Department of the Army policy on continuation of a contract; and

WHEREAS, the Armament Retooling and Manufacturing Support (ARMS) Act of 1992 (Public Law 102-484) encourage the Operating Contractors of Government-owned, Contractor-operated (GOCO) Army Ammunition Plants (AAPs) to pursue the use of idle facilities for the benefit of both the Government and the Operating Contractor;

NOW, THEREFORE, the parties hereto do, by mutual agreement, enter into this consolidated facilities use contract for the maintenance, surveillance, accountability and use of Government Furnished Property (GFP) and Equipment (GFE) at Volunteer Army Ammunition Plant, Chattanooga, Tennessee, in accordance with the following:

1. Contract DAAA09-86-Z-0007 shall be superseded and replaced by this Contract as of 01 Oct 95.

2. This Contract DAAA09-94-E-0017 shall consist of:

   a. Part I - THE SCHEDULE

      Section A - Contract Form
      Section B - Supplies/Services and Prices
      Section C - Description/Specification Work Statements
      Section E - Inspection and Acceptance
      Section G - Contract Administration Data
      Section H - Special Contract Requirements

b. Part II - CONTRACT CLAUSES

Section I - Contract Clauses

c. Part III - LIST OF DOCUMENTS, EXHIBITS AND ATTACHMENTS

Section J - List of Documents, Exhibits and Other Attachments.

3. Orders placed, subcontracts executed, work in progress, obligations made, and liabilities incurred and accrued for the requirements which are transferred from the previous Contract shall be treated under this Contract to the same extent and with the same force and effect as if initially commenced hereunder, unless finalized in said previous Contract.

4. It is further agreed that procedures, policies, submissions and other standing documents required to be furnished to the Contracting Officer under the previous Contract will be considered as satisfying similar requirements under this Contract to the extent they have been approved or are legally required. The Contractor shall advise the Contracting Officer of the Specific Documents so chosen for application hereto. Any approvals granted by the Contracting Officer under the previous Contract shall be deemed to satisfy any requirements under this Contract to the extent the Contractor advises the Contracting Officer that such prior approvals have been elected to utilization and further to the extent that procedures, policies, submissions, and other standing documents are in compliance with current laws and regulations (including the FAR) applicable on the date of award of this Contract. Documents and correspondence so incorporated by reference into this contract shall be subject to the record keeping requirements hereunder, even though initially generated under the previous contract. Election of approvals granted under the prior contract to be applicable to this contract must be made in writing to the ACO/COR within 90 days of the effective date of this contract. The Contractor is advised that irrespective of other clauses in the contract, communication called for under this ontract will be conducted with the local Administrative Contracting Officer/Contracting Officer's Representative (ACO/COR).

5. This facilities contract between the parties hereto contains the terms and conditions to which the Contractor agrees without exception and with which the Contractor shall comply at no direct cost to the government (except where provided for by specific provision) for any GFP/GFE that may be provided to the Contractor now or in the future.

6. The Government recognizes that the Contractor is an established industrial organization with proven capabilities both technical and administrative, and the Government and the Contractor recognize that the proper discharge of the Contractor's responsibilities to the Government hereunder and to its employees requires that the Contractor shall, to the fullest extent compatible with law, exercise his initiative, ingenuity and know-how in performing the Contract work and in maintaining proper safety standards.

(End of narrative A001)

SECTION B - SUPPLIES OR SERVICES AND PRICES/COSTS

:-1

SECTION B - SUPPLIES OR SERVICES AND PRICES/COSTS

B-1

B.1 This is a no cost facility use contract. The period of performance is five years from the effective date of this contract.

B.1.1 The contractor shall provide maintenance, surveillance and accountability of the Government property for the operations at Volunteer Army Ammunition Plant in accordance with the terms and conditions of this contract.

B.1.2 The contractor shall provide maintenance, surveillance and accountability of the Government property listed at Attachment 1, Section J of the contract at no charge to the Government.

B.2 Subject to the final approval of the contracting officer, the Government shall allow contractor retention of Government property listed at Attachment 1, Section J.

B.3 Contractor retention may include use of Government property in DOD contracts or commercial use IAW 10 USC 2501.

B.3.1 Use of Government property under DOD contract is at no charge to the contractor. IAW 45.404(c), other consideration will be allowed for use of Government facilities in support of commercial efforts. This will be accepted in lieu of the rental charge set forth in FAR 52.245-9, use and charges.

B.3.2 The charge for use of Government property for commercial use will be negotiated concurrently with Maintenance of Inactive Industrial Facility (MIIF) negotiations for the following fiscal year and will offset the negotiated price for the MIIF order.

B.3.2.1 Tenant usage charge encompasses the occupancy charge, the equipment usage charge (if any) and any additional charges the contractor levies to the subcontractor for use of Government property. It includes an equitable allocation of indirect costs associated with the operation of the plant.

B.3.2.1.1 The occupancy charge is the consideration to the Government for use of the Government property.

B.3.2.1.1.1 The minimum charge for use of Government property for commercial use is the occupancy charge.

B.3.2.1.2 The equipment usage charge is a separate charge for use of equipment. This rate is directly correlated to the value of the equipment proposed for use. The purpose of the Rate is to assure an equitable charge is derived for use of high dollar value equipment. An equipment use charge is not required if an equitable rate can be derived from an occupancy charge. The equipment value is a function of the market value of the equipment and the cost of its maintenance requirements.

B.3.2.2 The tenant usage charge should be representative of the local commercial rate for similar building space and use of equipment.

B.3.2.2.1 The tenant usage charge should be equitable and provide a reasonable profit to the contractor.

B.3.2.3 The occupancy charge and an estimate of the potential total revenues provided by the tenant usage charge shall be proposed by the contractor. A Government/contractor sharing ratio of the final negotiated total potential revenue generated by the tenant usage charge is negotiated concurrently with the annual MIIF order. The sharing ratio shall allow for reasonable contractor profit and equitable offset to the Government maintenance costs. From the sharing arrangement, a total MIIF offset is determined and the next years MIIF price to the Government reduced based on the negotiated lump sum amount. The disposition of surplus MIIF offset shall be at the direction of the contracting officer. The lump sum amount is not adjusted during contract performance based on actual cost experience.

B.3.2.4 If appropriate, a separate rate for use of equipment (see B.3.2.1.2) will be negotiated and included in the MIIF offset explained in paragraph B.3.2.3 above. The application process of the equipment use fee as MIIF offset is the same as the occupancy charge.

B.3.2.5 The occupancy charge may be determined through an equipment appraisal method for use of equipment and a local Market Survey for use of space. Appraisal shall be conducted by a third party (other than contractor staff), concurred with by the ACO/COR and submitted with the annual MIIF proposal. Market surveys shall be conducted so to represent the local market by using at least two independent price quotations for rent of similar space, be concurred with by the ACO/COR and submitted with the annual MIIF proposal.

B.3.2.5.1 Other methods may be used to derive occupancy and/or equipment usage charges such as industrial park surveys, competitive offers, an accounting method, or a negotiated percentage of sales.

B.4 Maintenance, surveillance and property accountability shall be performed in accordance with the scopes of work and contractor plans located at Section J and the terms and conditions of this contract.

B.5 Maintenance Funding Terms

B.5.1 Production Equipment

B.5.1.1 Excess to plant's mission: Equipment is offered ''as is/where is''. The contractor will maintain all equipment retained for facility use at a level to prevent deterioration and assure use for its intended purpose. This level of maintenance shall be described in the maintenance plan required by Section C of the contract.

B.5.1.1.1 For commercial work: The contractor will be responsible for all repair/replacement (at current market value of equipment) cost's while utilizing equipment for commercial work. The Government may elect to waive the requirement for the contractor to repair or replace equipment which is excess to the Government's needs. The Government may replace non-operational equipment with similar equipment from other facilities as is available. However, in no event will the Government be held responsible for costs or delays caused by the failure of excess equipment.

B.5.1.1.2 For DOD contracts other than workload (workload in this case is AMCCOM directed sole source production authorized by the applicable justification and approval versus production where the procurement is completed): The abnormal maintenance provision of the DOD production contract takes precedence. In the absence of an abnormal maintenance provision, the contractor will be responsible for all repair/replacement costs while utilizing equipment for DOD production contracts (other than workload). The Government may elect to waive the requirement for the contractor to repair or replace equipment which is excess to the Government's needs; however, in no event will the Government be held responsible for costs or delays due to the failure of the equipment.

B.5.1.2 Required for replenishment: Equipment is offered ''as is/where is''. The contractor will maintain IAW paragraph 3.1.6.1, Maintenance SOW, Section C, of this contract.

B.5.1.2.1 For commercial work: The contractor will be responsible for all repair/replacement (at current market value of equipment) costs while utilizing equipment for commercial work. The Government may replace non-operational equipment with similar equipment from other facilities as is available. However, in no event will the Government be held responsible for costs or delays due to the failure of the equipment.

B.5.1.2.2 For DOD contracts (other than workload): The abnormal maintenance provision, of the DOD production contract takes precedence. In the absence of an abnormal maintenance provision, the contractor will be responsible for all repair/replacement costs while utilizing equipment for DOD production contracts (other than workload). However, in no event will the Government be held responsible for costs or delays due to the failure of the equipment.

B.5.2 Real Property per FAR 45.101 except utility distribution systems: The contractor accepts the property ''as is''.

B.5.2.1 Excess

B.5.2.1.1 For commercial use: The contractor accepts responsibility for all repairs deemed necessary by the contractor or the tenant. When repair costs are excessive and when other facilities exist, the Government may elect to authorize the movement of a contractor/tenant to another facility on the installation at no cost to the Government. In no event will the Government be held responsible for delay/costs incurred by the contractor/tenant due to needed repairs on a excess building.

B.5.2.2 Non-excess

B.5.2.2.1 For commercial use: The contractor is responsible for normal maintenance. All preventive maintenance (maintenance performed on a regularly scheduled basis to prevent the occurrence of defects and to detect and correct minor defects before they result in serious consequences), and corrective maintenance (maintenance required to return property to such a condition that it may be effectively utilized for its intended purpose) is normal maintenance and is the responsibility of the contractor. If the Government elects, subject to availability of funds, it will fund 100% of the cost exceeding $25,000 per occurrence of other than normal maintenance. However, in no event will the Government be held responsible for delays/costs incurred as a result of a repair deemed necessary by the contractor/tenant. In the event the Government elects to fund a repair, the Government will not be held responsible for delays encountered while awaiting funding.

B.5.2.2.2 For DOD contracts: The contractor is responsible for normal maintenance. All preventive maintenance (maintenance performed on a regularly scheduled basis to prevent the occurrence of defects and to detect and correct minor defects before they result in serious consequences), and corrective maintenance (maintenance required to return property to such condition that it may be effectively utilized for its intended purpose) is normal maintenance and is the responsibility of the contractor. If the Government elects, subject to availability of funds, it will fund 100% of the cost exceeding $25,000 per occurrence of other than normal maintenance. However, in no event will the Government be held responsible for delays/costs incurred as a result of a repair deemed necessary by the contractor/tenant. In the event the Government elects to fund a repair, the Government will not be held responsible for delays while awaiting funding.

B.5.2.2.3 For all other non-excess real property maintained under this contract: The Government reserves the right to fund the maintenance, if any, the Government determines appropriate. In no event will the Government be held responsible for the timeliness of a repair determined necessary by the contractor. In the event the Government elects to fund a repair, the Government will not be held responsible for delays while awaiting funding.

B.5.2.2.4 Normal maintenance cost for a Government/contractor shared building shall be shared equitable between the Government and facility use contractor. If the Government elects, it will fund 100% of the contractor's share of the cost exceeding $25,000 per occurrence for other than normal maintenance. However, in no event will the Government be held responsible for delay/costs incurred as a result of a repair deemed necessary by the contractor/tenant. In the event the Government elects to fund a repair, the Government will not be held responsible for delays encountered while awaiting funding.

B.5.2.2.5 The contractor shall identify other than normal maintenance required, recommend corrective action and develop a detailed estimate of the maintenance cost. The Government reserves the right of final determination regarding Government funding of any Government Real Property Maintenance. Any maintenance that is emergency in nature shall be reported to the COR staff as soon as possible.

B.5.3 UTILITY DISTRIBUTION SYSTEMS:

B.5.3.1 The contractor accepts the facilities ''AS IS/WHERE IS''. In the event of a failure/necessary repair, the costs will be the responsibility of the Government subject to the availability of funding.

B.5.3.2 In some cases the Government may elect not to totally repair/replace facilities.

B.5.3.3 However, in no event will the Government be held responsible for cost incurred or delays incurred on any commercial work (contractor or tenant) or DOD contract due to the failure of a support system/facility or its need for repair.

(End of narrative B001)

SECTION C - DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

C-1

DESCRIPTION OF THE FACILITIES

The facilities, hereinafter referred to as the ''plant'' consist of that Government-owned industrial installation known as Volunteer Army Ammunition Plant located in the vicinity of Chattanooga, Tennessee, a plant structured primarily for the manufacture of propellants. The plant is more specifically deemed to consist of all land, buildings, structures, production lines, laboratories, shops, first aid stations, storage facilities, utilities and appurtenances thereto together with equipment including without limitation, transportation and maintenance equipment necessary or appropriate in or about a plant of the type described and all as agreed to by the parties hereto.

(End of narrative C001)

C-2

**SEE SECTION J FOR STATEMENT OF WORK.**

(End of narrative C002)

SECTION E - INSPECTION AND ACCEPTANCE

1. INSPECTION OF FACILITIES ....................................52.246-10......................... (APR 1984)

2. AMENDMENT/MODIFICATION NO. P00002

3. EFFECTIVE DATE 05 DEC 1995

4. REQUISITION/PURCHASE REQ See Schedule

5. PROJECT NO. (If applicable) ACR

6. ISSUED BY CODE W52P1J
HQ IOC
AMSMC-PAI-C
SANDY KACURBER /309-782-3360
ROCK ISLAND IL 61299-6000

7. ADMINISTERED BY (If other than Item 6) CODE

SCD C PAS NONE ADP PT W52H09

8. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State and ZIP Code)
ICI AMERICAS INC
CONCORD PLAZA
3411 SILVERSIDE ROAD
PO BOX 15391
WILMINGTON DE 19850

P SO 12/26

CODE 0VX27 FACILITY CODE

(X) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACT/ORDER NO. DAAA09-94-E-0017

10B. DATED (SEE ITEM 13) 94NOV22

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods:
(a) By completing Items 8 and 15, and returning ____ copies of the amendments; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
No change to obligation data

C

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

( ) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT/ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation data, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

X C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 243-1

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not, [X] is required to sign this document and return copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

See second page for description.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
DOUGLAS A. BORGESON
Procuring Contracting Officer

15B. CONTRACTOR/OFFEROR
[signature]
(Signature of person authorized to sign)

15C. DATE SIGNED
7 Dec 95

16B. UNITED STATES OF AMERICA
BY [signature: Douglas A Borgeson]
(Signature of Contracting Officer)

16C. DATE SIGNED
05 DEC 1995

NSN 7540-01-152-8070
PREVIOUS EDITIONS UNUSABLE

30-105-02

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

SECTION A - SUPPLEMENTAL INFORMATION

THE PURPOSE OF THIS FIRM FIXED PRICE MODIFICATION IS TO ADD THE IOC APPROVED CONTRACT LANGUAGE REGARDING CONTRACT LENGTH AUTHORIZATION, TERMINATION, AND LIABILITY UNDER FACILITY USE CONTRACTS TO THE NO COST FACILITY USE CONTRACT WITH ICI EXPLOSIVES/ENVIRONMENTAL. FOR THE VOLUNTEER ARMY AMMUNITION PLANT. THERE IS NO COST IMPACT ASSOCIATED WITH THE INCLUSION OF THIS LANGUAGE.

''TENANT USE CONTRACT LENGTH AUTHORIZATION, TERMINATION, AND LIABILITY UNDER FACILITY USE CONTRACTS

A. THE GOVERNMENT HEREBY AUTHORIZES THE CONTRACTOR TO ENTER INTO TENANT USE CONTRACTS UNDER THIS FACILITY USE CONTRACT DURING THE TERM HEREOF FOR SPECIFIC USES OF THE FACILITY AS APPROVED BY THE GOVERNMENT FOR TIME PERIODS NOT TO EXCEED TWENTY FIVE (25) YEARS FROM THE DATE OF THE TENANT USE CONTRACT, NOWITHSTANDING THE FACT THAT SAID TIME PERIODS MAY EXCEED THE TERM OF THIS CONTRACT.

B. THE ESTABLISHED TERMS AND CONDITIONS OF THE TENANT USE CONTRACT WILL BE REVIEWED BY THE FACILITY USE CONTRACTOR AND THE TENANT USE CONTRACTOR FROM TIME TO TIME FOR ADJUSTMENT AS DETERMINED NECESSARY.

C. EXCEPT AS NOTED IN (I) BELOW; IN THE EVENT THAT THE CONTRACTOR CEASES TO BE THE FACILITY USE CONTRACTOR FOR THIS SITE WHILE SUCH AUTHORIZED TENANT USE CONTRACT REMAIN IN EFFECT, THE GOVERNMENT SHALL (1) REQUIRE ANY SUCCESSOR FACILITY USE CONTRACTOR TO ASSUME ALL RESPONSIBILITIES AND LIABILITIES WITH RESPECT TO AND BE BOUND BY SAID TENANT USE CONTRACTS, PROVIDED SUCH AGREEMENTS HAVE BEEN REVIEWED AND ADJUSTMENTS MADE AS PROVIDED FOR IN (B) ABOVE, AND (2) RELEASE AND HOLD HARMLESS THE CONTRACTOR, WITH RESPECT TO SAID TENANT USE CONTRACTS, FROM ALL RESPONSIBILITIES AND FROM THOSE LIABILITIES ARISING FROM ACTS/OMISSIONS OCCURRING AFTER THE DATE THE CONTRACTOR CEASES TO BE THE FACILITY USE CONTRACTOR FOR THE SITE.

D. IN THE EVENT OF CONTRACTOR DEFAULT, THE GOVERNMENT MAY TERMINATE THIS CONTRACT OR ANY PORTION THEREOF.

E. IN THE EVENT OF A CONGRESSIONAL OR PRESIDENTIAL RESOLUTION OR DECLARATION OF NATIONAL EMERGENCY OR MOBILIZATION, THE CONTRACTING OFFICER MAY ISSUE A THIRTY (30) DAY NOTICE FOR TERMINATION OF THIS CONTRACT AND RECLAMATION OF THE FACILITY OR ANY PORTIONS THEREOF.

F. IN ADDITION TO THE ABOVE, THE CONTRACTING OFFICER MAY ISSUE THE FACILITY USE CONTRACTOR 1) A ONE HUNDERED EIGHTY (180) DAY NOTICE FOR TERMINATION OF ANY CONTRACTS AND/OR TENANT USE CONTRACT UTILIZING FACILITIES REQUIRED FOR EMERGENCY PLANNING PURPOSES WHEN THE DEPUTY CHIEF OF STAFF FOR AMMUNITION DETERMINES IT TO BE IN THE BEST INTERESTS OF THE GOVERNMENT, OR 2) A TWO YEAR NOTICE UPON ARMY ACQUISITION EXECUTIVE APPROVAL FOR RECLAMATION OF FACILITIES OR SEGMENTS THEREOF WHICH ARE NOT IMMEDIATELY REQUIRED FOR EMERGENCY PLANNING PURPOSES. WHEN EITHER OF THESE SITUATIONS OCCUR, A TIMETABLE WILL BE NEGOTIATED WITH THE FACILITY USE CONTRACTOR (REPRESENTING ITS OWN AND ANY SUBCONTRACTOR INTERESTS) FOR THE CESSATION OF COMMERCIAL PRODUCTION/OPERATIONS AND THE RETURN OF THE FACILITY TO THE ARMY.

G. THE FAR PART 30, 31, AND 49, AS WELL AS FAR APPENDIX B, SET FORTH THE TERMS FOR ESTABLISHING APPROPRIATE TERMINATION SETTLEMENT COSTS ASSOCIATED WITH ANY CONTRACTS OR TENANT USE CONTRACTS BEING PERFORMED WITHIN THE AFFECTED AREAS. SETTLEMENT CONSIDERATION COSTS MUST BE FOUND ALLOWABLE, ALLOCABLE, AND REASONABLE IN ACCORDANCE WITH THE FAR REQUIREMENTS. SETTLEMENT CONSIDERATION WILL INCLUDE THE CONTRACTORS/TENANT USE CONTRACTOR FINANCIAL INVESTMENT AND CONTRACTUAL COMMTMENT FOR EACH INDIVIDUAL CONTRACT AND/OR TENANT USE CONTRACT IMPACTED. TENANT USE CONTRACTORS WILL NEGOTIATE ALL SETTLEMENT AGREEMENTS WITH THE FACILITY USE CONTRACTOR.

H. WHEN A FACILITY USE CONTRACT IS TERMINATED AND IT IS THE INTENT OF THE GOVERNMENT TO ESTABLISH A SUCCESSOR FACILITY USE CONTRACT, THE SUCCESSOR WILL BE REQUIRED TO ACCEPT THE TERMS AND CONDITIONS OF TENANT USE CONTRACTS IN PLACE TO THE MAXIMUM EXTENT POSSIBLE SO LONG AS SUCH TERMS AND CONDITIONS DO NOT VIOLATE APPLICABLE LAWS AND REGULATIONS. THIS WILL BE ACCOMPLISHED THROUGH THE INCLUSION OF THE TERMS AND CONDITIONS OF ESTABLISHED TENANT USE CONTRACTS IN THE SOLICITATION ISSUED TO OBTAIN A SUCCESSOR FA[illegible]Y USE CONTRACTOR.

I. THE FACILITY USE CONTRACTOR MAY TERMINATE THIS CONTRACT BY GIVING ONE HUNDRED EIGHTY (180) DAYS WRITTEN NOTICE TO THE CONTRACTING OFFICER. DAMAGES TO THE GOVERNMENT RESULTING FROM THIS TERMINATION WILL BE USED TO OFFSET ANY FUNDS OWED TO THE CONTRACTOR. ANY DAMAGES TO TENANT USE CONTRACTORS AS A RESULT OF SUCH TERMINATION WILL BE THE RESPONSIBILITY OF THE FACILITY USE CONTRACTOR UNLESS OTHERWISE DETERMINED BY THE GOVERNMENT .

J. UPON TERMINATION OF ALL OR PART OF THIS CONTRACT, THE FACILITY USE CONTRACTOR SHALL, PRIOR TO VACATING THE FACILITY, RETURN ANY EMERGENCY PLANNED GOVERNMENT PROPERTY TO ITS CONDITION WHEN RECEIVED, GIVEN FAIR WEAR AND TEAR. THIS OBLIGATION MAY BE RELIEVED BY THE CONTRACTING OFFICER WITH WRITTEN AUTHORIZATION.''

PRIOR TO ENTERING INTO AN EXTENDED TERM AGREEMENT WITH A TENANT USE CONTRACTOR, FACILITY USE CONTRACTORS MUST OBTAIN SPECIFIC CONTRACTING OFFICER PERMISSION TO DO SO. AUTHORIZATION WILL BE BASED UPON BENEFIT TO BE RECEIVED BY THE GOVERNMENT FOR THE IMPLEMENTATION OF SPECIFIC EFFORTS. THESE BENEFITS WILL ENCOMPASS A NUMBER OF FACTORS, INCLUDING BUT NOT LIMITED TO COST OFFSETS, REVENUE GENERATED, JOBS CREATED, CRITICAL SKILLS RETAINED, READINESS POSTURE ENHANCEMENT, CLEAN UP OF ENVIRONMENTAL CONCERNS, ETC. IN ADDITION, FACTORS SUCH AS FACILITY USE CONTRACTOR HISTORY, SUCCESS, AND INITIATIVE WILL ALSO BE TAKEN INTO ACCOUNT. EACH PROPOSAL WILL BE LOOKED AT ON AN INDIVIDUAL BASIS. BASED UPON THE SPECIFIC MERITS OF THE PROPOSAL AND THE OVERALL SOUNDNESS OF THE BUSINESS DECISION, THE CONTRACTING OFFICER SHALL DETERMINE WHETHER OR NOT AN EXTENDED LENGTH TENANT USE CONTRACT WILL BE AUTHORIZED.

(End of narrative A002)

The Volunteer Site
6703 Bonny Oaks Drive
P.O. Box 22608
Chattanooga, TN 37422-2608
Telephone: 423-855-7256
Fax: 423-855-7270

July 3, 1996

Mr. James E. Fry
Contracting Officer's Representative
SMCVO - CR
Volunteer Army Ammunition Plant
Chattanooga, TN 37422-2608

Re: PROPOSAL - XAVIER CHEMICALS COMPANY (XCC)

Dear Mr. Borgeson:

The attached proposal requests authorization for use by Xavier Chemicals Company (XCC) of the sulfuric acid plant and related facilities. This requested use is in accordance with ICI's planned development of the VAAP site under the ARMS Initiative.

In addition to the direct revenue payments, XCC will provide maintenance to facilities and grounds at an annual savings of approximately $200,000 to the Army. Approximately 20 employees will be needed to operate the facility at projected production levels. Operation and maintenance of this critical asset supports the mission requirements of the Volunteer Army Ammuntion Plant.

Please review and forward as appropriate to the Contracting Officer at IOC (Mr. Douglas A. Borgeson, AMSIO - ACG - ARMS) for approval.

Sincerely yours,

Charles S. Saunders, Vice President
Government Operations

CSS:bb

# ARMS INITIATIVE

# FACILITY USE REQUEST PROPOSAL

## XAVIER CHEMICALS COMPANY

**3 JULY 1996**

**SUBMITTED BY:**

**ICI AMERICAS INC.**

**ICI PROPRIETARY INFORMATION**

## EXECUTIVE SUMMARY

ICI Americas Inc. (ICI) requests approval for Xavier Chemicals Company (XCC) use of the sulfuric acid plant and related facilities. XCC will manufacture various grades of sulfuric acid (including oleum) and related products. This use is not Department of Defense related but does support the mission requirements of the Volunteer Army Ammunition Plant.

XCC is a corporation based in Atlanta, Georgia and is a wholly-owned subsidiary of Xavier Corporation of Houston, Texas. Xavier Corporation is a publicly traded company currently listed on the Alberta, Canada Stock Exchange under the symbol XZX and Xavier Corporation is expected to be listed on the NASDAQ Exchange by September, 1996. XCC will manage and operate the facility while financial and commercial resources will be provided through Xavier Corporation as required. Guaranty will be given by Xavier Corporation relating to payment of all amounts due to ICI under the facilities use agreement. XCC has agreed to expend approximately $6,700,000 to modify and upgrade the facility in accordance with ICI approved designs to ensure enviromental compliance. These improvements become the property of the U. S. Army upon the termination of the agreement.

No ARMS funds are requested.

The term of the agreement is for a twenty-five (25) year period with an option to renew for two (2) successive twenty-five (25) year periods. In consideration XCC shall pay a license fee in the amount of $1,000,000 upon execution of the agreement. Annual license fee payments will be made during the remaining agreement term based on a percentage of gross annual sales (a sliding scale of 1% to 1.75% for gross sales up to $10,000,000 and 2% of gross sales in excess of $10,000,000; initial sales, once the facility reaches full production, are expected in the range of $10,000,000 to $15,000,000 and if sales were $12,500,000 the annual license fee would be $187,500) subject to a $50,000 minimum for license years one (1) through seven (7) and $100,000 thereafter. In addition a security deposit in the amount of one times the annual license fee plus two times the expected monthly utility fees ($120,000 initially) is required as well as a performance bond for the construction of improvements in an amount equal to $6,700,000.

ICI Americas requests that this facility use request be granted approval.

*REQUEST FOR USE OF FACILITIES/ARMS FUNDS*
*The Volunteer Site*

# Mandatory Checklist:

1) Location Description Displayed On Map:
**Attachment 1**

2) Description of Proposed Use:
**The facilities and equipment will be used for the production of sulfuric acid**

3) List of land/buildings/ structures required (include building number, proposed square footage required, and emergency planned or excess status):
**Attachment 2**

4) List of Equipment required (Include equipment manufacturer, model number, government identification number and emergency planning or excess status).
**Extensive listing - on file and will furnish if needed**

5) Estimated Period of Use:
**25 years**

6) Projected Employment Level:
**Initially 10 with growth to 20 at full production**

7) Impacts on various elements to include:
A. Emergency production assignment:: **Readily available**
B. Critical skills retention: **Retains critical skills (ie process monitoring)**
C. Infrastructure: **Maintains & improves infrastructure**
D. Government projects (e.g., LIF, 2910, IF. . . ): **None**
E. Future MIIF/G&A and/or production costs: **Reduces cost to the Government.**
F. NTV's: **None**
G. Cultural resources: **None**
H. Existing tenants: **None**
I. Local communities: **Job creation & other economic benefit**
J. Others as identified: **None**

8) Requested ARMS Incentives (for technical approval, must provide project SOW and SF1411 with detailed cost support):
**None**

9) Environmental Criteria:

A. Is the activity/process DOD or non-DOD related? Explain (10USC2692)

**This is a non-DOD related process but can & will support DOD requirements if needed**

B. Hazardous Waste Generation:

1. Will the activity/process require the use of hazardous materials (DOD or non-DOD)? What type? Quantities? Projected storage? (40 CFR 260-72 10 USC 2692)

**Acids (Sulfuric and Nitric) with PH < 2 and Vanadium Pentoxide are involved in the process. The acids are anticipated to be stored less than 90 days. The Vanadium Pentoxide is a catalyst in the process and will be permanent to the site.**
**Quantities depends on production activity (TBD)**

2. If non-DOD use, IAW 10 USC 2692 (6-8) (Section 2843-Exception to the prohibition on the storage and disposal of nondefense toxic and hazardous materials). If approval from the Secretary of the Army has to been granted, an exception must be obtained for storage and disposal of nondefense toxic and hazardous materials on military installations. Has approval been obtained from the Secretary of the Army? Will the materials brought onto the installations be consumed or incorporated into an approved process? (10 USC 2691):

**The process will be retained for DOD use, however, there will be interim non-DOD use. The process is for manufacturing and there is no intent to store or dispose of the materials. Approval has not been requested to date.**

3. Will the activity/process generate hazardous waste? Yes or No. If yes, what type/waste stream? Quantity? specific EPA waste codes? What is the projected rate of generation per month? (40 CFR 262, 262)

   **Yes. There will be some effluent of acidic wastewater, and there may be some residual Vanadium Pentoxide. The production rate of the facility is not presently known so the Vanadium Pentoxide cannot be estimated. The effluent wastewater rate is estimated to have a ceiling of 100 GPM.**

4. Will the projected rate of generation of hazardous waste cause or could cause the storage of this waste beyond the accumulation timeframe for on-site storage allowed by 40 CFR 262? Explain. (40 CFR 262.34)
   **No**

5. What will the method be for proper disposal of hazardous waste? Explain in detail. Does the Facility Use Contractor contemplate using any of the permitted hazardous waste treatment, storage, or disposal facilities owned by the Army? Explain in detail. If the hazardous waste is to be disposed of off-site, please provide the name of permitted TSDF and their EPA ID numbers (40 CFR 262.12.264).

   **Any hazardous wastestreams will be treated or neutralized prior to disposal. Any solid waste will be disposed of by commercial disposal agencies at appropriately permitted off-site facilities.**

6. Does the activity/process involve bringing hazardous waste on-site for use, treatment, storage or disposal? Explain in detail. (40 CFR 264/265):
   **No**

7. Will demilitarization by thermal treatment of ammunition be done on-site? Yes or No. Is the material related to DOD ammunition items? What type of material/hazardous waste will be brought on-site? Is the Facility Use Contractor willing to obtain the appropriate hazardous waste TSDF permit for their specific operation(s) if denied the use of Army owned permitted

TSDF facilities? What facilities will be used? Duration of use? How will the ash/residue from demil process be handled/disposed of? Is similar demil process be handled/disposed of? Is similar demil operation currently being performed at your facility? (40 CFR 260-265, 10 USC 2692).
**No**

8. Are proposed activities/processes stipulated in existing current RCRA permit? Yes or No. Explain (40 CFR 264/265).
**No**

9. Will the proposed activities/processes require the use of the on-post sanitary landfill? How will the disposal of solid waste be handled and by whom? (40 CFR 258)
**No. Disposal will be off-site by an appropriate commercial disposal agency.**

10. The facilities use/coordinated contractor may be contractually bound to reimburse the Government for fines and penalties paid by the government due to violation(s) of environmental laws/regulations caused by your operations. Is the facilities use/coordinated contractor willing to accept this liability?
**Yes**

C. Environmental Baseline Study (EBS)

1. Has an Environmental Baseline Study (EBS) been performed? What is the present condition of the facility/area under consideration for use? (AR 200-1, App B; AMCCOM Policy)
**No**

2. If an EBS is not performed, is the facility contractor and/or your subcontractors willing to be responsible for a portion of or all of the remediation costs associated with the identified areas?
**Yes**

D. Permits:

1. What type of Federal, State or local permits are required for the activity/process? (Clean Water Act (CWA), Clean Air Act (CAA), Resources Conservation Recovery Act (RCRA))?
   **NPDES, STATE RCRA, CAA**

2. Is the proposed activity/process currently identified under an approved/current operating permit? Explain in detail. (CAA, CWA, RCRA)
   **The Government currently has NPDES, CAA & RCRA but contractor will have to apply separately.**

3. Will the existing permit be used in the event the waste stream is in conjunction with permit restrictions? Explain. (CAA, CWA, RCRA)
   **The existing permit will not be used.**

4. What are the expected air emissions for projected operations? Will a permit to operate a new stationary source be required? Will the projected activities contribute to an increase in the facilities overall VOC emissions? Explain. (42 USC 7401-7671)
   **SOx and acid mist. Permit will be applied for. No.**

5. Is your facility located in a national ambient air quality standard (NAAQS) non-attainment area? How will you address the Clean Air Act Conformity Rule? (42 USC 7401-7671)
   **No**

6. What are the expected wastewater effluents? Does the existing permit require modifications? Explain. (40 CFR 122.1)
   **Acidic wastewaters will be treated. Some sulfates would expected. The contractor will obtain permit for both wastewater & stormwater. Existing NPDES will not require modification.**

7. Will the Facility Use Contractor be willing to obtain their own operating permit for identified operations and designate yourself as the "Operator" of the facility(s)? Explain. (CAA, CWA, RCRA).
**Yes**

8. In the event a Notice of Violation is issued to the Government as result of the Facility Use Contractor operations exceeding any/all permit limitations, will you reimburse the Government any and all permit limitations, will you reimburse the Government any and all fines/fees incurred relating to the NOV(s)?
**Yes**

E. Ozone Depleting Materials: Will the activity/process require the use of Class I Ozone Depleting Substances? Explain. (40 CFR 82)
**No**

F. Preliminary Assessment Screening (PAS): Is a Preliminary Assessment Screening required? Yes or No. If yes, provide the results. If no, explain.
**Yes**

Has a Preliminary Assessment Screening been prepared? Yes or No? If yes, provide the results. If no, explain.
**Yes**

If a Preliminary Assessment Screening is not performed, the facility contractor may be responsible for a portion of the overall remediation of the identified site.

G. National Environmental Policy Act:

1. Is the facility contractor willing to abide to the environmental documentation requirements as stipulated by NEPA IAW AR 200-2? (42 USC 4321)
**Yes**

2. Has the activity/process previously been conducted at the installation? Explain. (42 USC 4321)
**Yes**

3. Is there approved/NEPA documentation on-site that adequately discussed the proposed activity process? Explain. (42 USC 4321)
**No. Facilities predate NEPA**

4. Will the activity/process require preparation of an Environmental Assessment? Environmental Impact Statement? Is the projected use adequately covered by a Categorical Exclusion as identified in AR 200-2? Explain.
**Yes. No. No.**

H. Environmental Program:

1. Will the facility Use Contractor allow the ACO/COR staff and this Headquarters to review any/all aspects of the subcontractors' operations relating to environmental compliance? (Mandatory Checklist for Facility Use Contracting) **Yes**

2. Will the Facility Use Contractor be willing to abide by the requirements as stipulated under SARA Title III, Community Right to Know? (40 CFR 302, 255, 370)
**Yes**

3. Will the Facility Use Contractor be willing to abide by the requirements as stipulated in Executive Order 12586 (Right-to-Know Laws and Pollution Prevention Requirements)? **Yes**

4. Will the proposed facility use/utilize any current or proposed CERCLA sites/operations? Explain in detail. 40 CFR 355.20) **No. They are listed as potential CERCLA sites**