# Attachment 1
# Pages 24 - 40

# FACILITIES

The Facilities shall consist of the following facilities at VAAP and the land immediately adjoining same:

1. The following buildings and equipment:

| Building | Description |
|---|---|
| 104 | Sulfuric Acid |
| 107 | Acid Lab (50% of North End Only) |
| 115 | Cooling Tower |
| 113-1-3 | Sellite Storage |
| 101 | Acid Storage |
| 113-1-2 | Soda Ash Storage |
| 520-4 | Liquid Sulfur Storage |
| 520-5 | Fuel Storage |

2. The land immediately adjacent to and between the buildings and facilities in Item 1 above excluding the roadways.

3. Spare parts and catalyst for the buildings and facilities in Item 1 above are excluded.

# FACILITIES USE AGREEMENT

This FACILITIES USE AGREEMENT ("Agreement") is made between ICI Americas Inc. ("ICI"), at the Volunteer Army Ammunition Plant, Chattanooga, Tennessee 37422("VAAP"), and Xavier Chemical Company ("SUBCONTRACTOR"), 2555 Cumberland Parkway, Suite 170, Atlanta, Georgia 30339.

## 1. LICENSE TO USE FACILITIES

The United States Army is the owner of VAAP and ICI is the United States Army's Contractor for the use of VAAP. ICI hereby certifies that ICI is the Contractor for the use of VAAP and ICI further certifies ICI has the authority to license the use of facilities at VAAP and ICI hereby grants to the SUBCONTRACTOR a License to use certain facilities at VAAP (identified in Appendix A and hereinafter called the "Facilities") for the use as a sulfuric acid plant. The License hereby granted shall be in consideration of and subject to the terms, covenants, and conditions recited in this Agreement which are hereby accepted and agreed by ICI and the SUBCONTRACTOR. The SUBCONTRACTOR acknowledges that this Agreement does not convey any ownership interest in the Facilities to the SUBCONTRACTOR.

## 2. DELIVERY OF THE USE OF THE FACILITIES AND AGREEMENT CLOSING

ICI shall deliver the use of the Facilities to the SUBCONTRACTOR on the 1st day of August 1996, and such day shall be deemed the Commencement Date (and also the "Closing Date" for this Agreement). The Commencement Date shall be the date of the start of the License Term of the License. On or before the Closing Date, the SUBCONTRACTOR shall deliver to ICI all of the following items and if the SUBCONTRACTOR fails to deliver all such items by the Closing Date, this Agreement shall immediately terminate and ICI shall have no further obligations to the SUBCONTRACTOR:

1. A Transaction Fee in the amount of $950,000.

2. The Security Deposit in the amount of $120,000.

3. An original of this Agreement executed by the Guarantor (Xavier Corporation) on both the signature page of this Agreement and on Appendix E of this Agreement.

4. A Performance Bond in accordance with Article 5(b) of this Agreement.

5. A Certificate of Insurance in accordance with Article 8(b) of this Agreement.

Initials



DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY INDUSTRIAL OPERATIONS COMMAND
ROCK ISLAND, ILLINOIS 61299-6000

3. **TRANSACTION FEE AND LICENSE FEE**

For the consideration of the covenants provided in this Agreement by ICI to the SUBCONTRACTOR, at the execution of this Agreement by the SUBCONTRACTOR the SUBCONTRACTOR shall pay to ICI a Transaction Fee in the amount of $50,000 to maintain this Agreement in effect through the Closing Date, on or before the Closing Date the SUBCONTRACTOR shall pay to ICI a Transaction Fee in the amount of $950,000, and thereafter on or before the last day of each License Term Year, the SUBCONTRACTOR shall pay to ICI an Annual License Fee based on the attached schedule identified as Appendix B ("Annual License Fee").

4. **LICENSE TERM**

Unless sooner terminated as herein provided, the License Term of this Agreement shall be in effect for a period of twenty-five (25) consecutive License Term Years beginning on the Commencement Date. Provided the SUBCONTRACTOR is not otherwise in default under this Agreement, the SUBCONTRACTOR, with at least six (6) months written notice to ICI prior to the end of the License Term, shall have the right to renew this Agreement for a second License Term of a period of twenty-five (25) consecutive License Term Years and thereafter, provided the SUBCONTRACTOR is not otherwise in default under this Agreement, the SUBCONTRACTOR, with at least six (6) months written notice to ICI prior to the end of the second License Term, shall have the right to renew this Agreement for a third License Term of a period of twenty-five (25) consecutive License Term Years.

5. **SECURITY DEPOSIT AND PERFORMANCE BOND**

a. On or before the Closing Date, the SUBCONTRACTOR shall pay a Security Deposit to ICI in an amount equal to one (1) times the expected Annual License Fee and two (2) times the estimated Monthly Utility Fee (which at the Closing Date shall be $120,000) as a bond for the faithful performance of the SUBCONTRACTOR'S obligations under this Agreement, including, but not limited to, the payment of the Annual License Fee and the Monthly Utility Fee. During any License Term of this Agreement, ICI, at the sole option of ICI, shall have the right to increase or decrease the amount of Security Deposit based solely upon one (1) times the amount of the expected Annual License Fee and two (2) times the amount of the estimated Monthly Utility Fee; however, no such adjustment shall be permitted until the end of the tenth consecutive License Term Year. If the Security Deposit is reduced, ICI shall issue a credit to the SUBCONTRACTOR against other obligations due and payable under this Agreement. If the Security Deposit is increased, the SUBCONTRACTOR shall pay the amount of such increase to ICI within thirty (30) days after receiving written notice of such increase from ICI. ICI may claim and retain such amount of the Security Deposit as is reasonably necessary to cure any defaults of the SUBCONTRACTOR. If ICI applies any part of the Security Deposit to cure any default of the SUBCONTRACTOR, the SUBCONTRACTOR shall deposit with

Initials ______ ______



HEADQUARTERS, U.S. ARMY ... OPERATIONS COMMAND
ROCK ISLAND, ILLINOIS 61299-6000

ICI upon demand, the amount so applied, so that ICI shall have the full amount of the initial Security Deposit on hand at all times during the term of this Agreement. The SUBCONTRACTOR shall not receive interest on the Security Deposit. ICI may commingle the Security Deposit with other ICI funds without any accounting to the SUBCONTRACTOR. The Security Deposit will be retained by ICI for thirty(30) days after the earlier of the termination of this Agreement or until after ICI has resolved any and all claims ICI may have against the SUBCONTRACTOR for any default under this Agreement; and thereafter, ICI shall return the Security Deposit or any remaining balance thereof, if any, to the SUBCONTRACTOR.

b. On or before the Closing Date, the SUBCONTRACTOR shall cause to be issued in a form acceptable to ICI and from an institution acceptable to ICI a Performance Bond in an amount equal to $6,700,000 for the construction of the alterations to the Facilities as defined in Appendix A and such Performance Bond shall remain in place until the completion of said construction.

## 6. UTILITY SERVICES

a. Utility Services. ICI will provide utility services to the SUBCONTRACTOR as described herein this Article of the Agreement. Unless as otherwise provided below, all lines necessary for delivering utilities defined herein and meters for measuring utilities used by the SUBCONTRACTOR shall be installed and maintained by ICI at no cost to the SUBCONTRACTOR. The SUBCONTRACTOR shall pay ICI a monthly utility fee for all utilities supplied to the SUBCONTRACTOR by ICI, at the rates defined herein. The SUBCONTRACTOR understands and agrees that ICI retains the right to designate a utility company as the ongoing provider of any utility to be furnished hereunder, in which case the SUBCONTRACTOR shall look solely to said utility company for ongoing service and their respective service rates.

b. Water Service. The SUBCONTRACTOR shall pay ICI a Monthly Utility Fee for water service at the rate shown in Appendix C of this Agreement.

c Electric Service. The SUBCONTRACTOR shall pay ICI a Monthly Utility Fee for electric service at the rate shown in Appendix C of this Agreement.

d. Telephone Service. The SUBCONTRACTOR shall contract directly with the local telephone company for telephone services. ICI will provide assistance in obtaining any easement over VAAP property as required by the telephone company.

e. Gas Service. The SUBCONTRACTOR shall contract directly with a local public utility company for gas service. ICI will provide assistance in obtaining any easement over VAAP property as required by the public utility company.

f. Sewer Service. All sewer service shall be provided by the SUBCONTRACTOR.

Initials



DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY [illegible] OPERATIONS COMMAND
ROCK ISLAND, ILLINOIS 61299-6000

g. Invoice Terms. All Monthly Utility Fees will be due within fifteen (15) days after ICI's invoice date.

h. Utility Fee Adjustments. The Monthly Utility Fee shall be revised on January 1 of each calendar year to the ICI rates then in effect for utility service at VAAP.

7. CONDITION, CARE, MAINTENANCE AND ALTERATION OF FACILITIES

a. Condition. The SUBCONTRACTOR acknowledges that it has inspected the Facilities, knows their condition, and understands that the use of the Facilities is contracted without any representation or warranty whatsoever and without obligation on the part of ICI to make any alterations, repairs, or additions. THE SUBCONTRACTOR SHALL ACCEPT THE FACILITIES AS-IS, WHERE-IS. USE OF THE FACILITIES IS PROVIDED BY ICI TO THE SUBCONTRACTOR WITHOUT ANY EXPRESSED OR IMPLIED WARRANTY AND SUCH USE IS PROVIDED SPECIFICALLY WITHOUT ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

b. Care. The SUBCONTRACTOR shall exercise due diligence in the protection of the Facilities against fire or damage from any and all other causes. The SUBCONTRACTOR shall be responsible for and at "All Risk" for any and all loss of or damage to the Facilities. The SUBCONTRACTOR shall also be responsible for any loss of or damage to any property of ICI, or the United States Army, to the extent that such loss or damage is caused by the SUBCONTRACTOR'S acts or omissions. The SUBCONTRACTOR shall promptly repair or replace, to the satisfaction of ICI, any of the foregoing described property so lost or damaged, or at ICI's option, pay to ICI an amount equal to the diminution in value or replacement cost.

c. Maintenance. After the delivery of the use of the Facilities by ICI to the SUBCONTRACTOR, the SUBCONTRACTOR, at its own expense and at all times, shall maintain the Facilities (including, without limitation, window glass, roofs, walls, floors, doors, loading docks, electrical systems, plumbing, heating equipment and any other system or equipment upon the Facilities) in good, safe, neat, clean and sanitary condition and shall surrender the Facilities, upon the termination of this Agreement, in as good condition as received, normal wear and tear excepted. The SUBCONTRACTOR shall also be responsible for maintaining in good condition sidewalks, driveways, lawns, and shrubbery immediately adjacent to the Facilities (including areas between buildings if the Facilities include more than one building or the entire defined area of the Facilities including roads exclusively used by the SUBCONTRACTOR and excluding roads non-exclusively used by the SUBCONTRACTOR). The SUBCONTRACTOR shall also perform the appropriate level of preventive maintenance on all Facilities furnished by ICI for use by the SUBCONTRACTOR in accordance with sound industrial practice or the manufacturer's recommendations for maintenance. In addition, the SUBCONTRACTOR shall perform all landscaping maintenance and standby

Initials



DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ... OPERATIONS COMMAND
ROCK ISLAND, ILLINOIS 61299-6000

equipment maintenance for the entire Acid Area at VAAP including the Facilities, the Nitric/AOP Acid Area and related facilities as defined in the Map in Appendix F. The landscaping shall be limited to keeping vegetation at a height not to exceed twelve (12) inches within boundaries as defined by ICI. The standby equipment maintenance shall be limited to the visual inspection of carbon steel equipment at least once per year in accordance with VAAP Preventative Maintenance Procedures.

d. Alterations. Except as otherwise provided in Exhibit A, the SUBCONTRACTOR shall not make any alterations, additions or improvements, in, to or about the Facilities without first obtaining the express written consent of ICI. Upon the termination of the License granted hereunder, the SUBCONTRACTOR, without recourse to either ICI or the United States Army, shall abandon in place any or all alterations, additions and improvements made to the Facilities.

e. Unsafe Conditions. If ICI discovers any condition that arises out of the SUBCONTRACTOR'S activity at VAAP that presents an immediate threat to the safety or health of any person or that threatens to endanger life, property, or the environment, ICI will so notify the SUBCONTRACTOR and the SUBCONTRACTOR shall take immediate steps to correct the condition or activity and eliminate the danger. If the SUBCONTRACTOR fails to take such immediate steps , ICI, in addition to any other right it may have, including the right to terminate this Agreement if the condition or activity constitutes a breach of this Agreement, may deny the SUBCONTRACTOR access to VAAP and ICI may take action to correct the condition or activity and collect the cost of doing so from the SUBCONTRACTOR. The SUBCONTRACTOR shall have no claim for damages against ICI, the United States Army or any director, officer, employee, subcontractor or agent of either of them on account of action taken in good faith pursuant to this provision, nor shall ICI's failure to take action by ICI pursuant to this provision relieve the SUBCONTRACTOR of any obligations it has under this Agreement.

f. Environmental Limitations. ICI agrees to protect, defend, indemnify and save harmless the SUBCONTRACTOR from and against all liabilities, obligations, claims, damages, penalties, lawsuits or administrative actions, response and cleanup costs, and all other costs and expenses (including, without limitation, attorneys' fees, consulting fees, costs of investigation, and costs of remediation), imposed upon or incurred by or asserted against the SUBCONTRACTOR by reason of any adverse environmental conditions associated with the Facilities that occurred prior to the SUBCONTRACTOR'S taking delivery of the use of the Facilities.

8. INSURANCE

a. Minimum Scope and Coverage. The SUBCONTRACTOR, at its own expense, shall maintain during the term of this Agreement the following insurance coverages written with insurance companies that are A. M. Best's rated A:

Initials



DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ... OPERATIONS COMMAND
ROCK ISLAND, ILLINOIS 61299-6000

1) All insurance coverages provided by the SUBCONTRACTOR under this Agreement shall contain, or be endorsed to contain, coverage of the United States Army and ICI as additional insureds (except for the Workers' Compensation Coverage) and insurance coverages will not be canceled or reduced without the insurer providing ICI with at least thirty (30) days (ten (10) days for notice of cancellation for non-payment) written notice.

2) Workers' Compensation insurance in compliance with statutory requirements and with Employer's Liability insurance of $1,000,000 and the coverage shall contain, or be endorsed to contain, a Waiver of Subrogation in favor of ICI and the United States Army.

3) Commercial General Liability (CGL) insurance written on an occurrence basis with Combined Single Limits for bodily injury and property damage of not less than $1,000,000 per occurrence and $1,000,000 in the aggregate and a deductible of not more than $1,000 per occurrence. The CGL policy shall provide coverage for Facilities Operations, Broad Form Property Damage, and Contractual Liability.

4) Automobile Liability insurance with Combined Single Limits for bodily injury and property damage of $1,000,000 per occurrence and $1,000,000 in the aggregate.

5) The SUBCONTRACTOR shall be required to be covered by Pollution Legal Liability insurance for the Facilities in an amount and type of coverage as solely determined by ICI. ICI shall cause the SUBCONTRACTOR to be endorsed on a policy provided by ICI and the SUBCONTRACTOR shall be required to pay to ICI the premium applicable to the SUBCONTRACTOR within ten (10) days after ICI's invoice date for said premium.

6) Physical Damage insurance for the Facilities at the full Replacement Cost of the Facilities expected to be $15,000,000 at the execution of this Agreement and revised annually thereafter as appropriate so that the Replacement Cost of the Facilities is adequately insured. Physical Damage insurance shall be written on an "All-Risk" basis with a deductible of not more than 20% of the insurance or $25,000, whichever is less.

b. Verification of Coverage. On or before the Closing Date, for the coverage required by this Agreement, the SUBCONTRACTOR shall deliver to ICI a Certificate of Insurance signed by a person authorized by the insurer. The receipt by ICI of an incomplete, inaccurate, or invalid Certificate of Insurance shall not relieve or decrease the liability of the SUBCONTRACTOR for its obligations under this Article 8 of this

Initials



DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY ... OPERATIONS COMMAND
ROCK ISLAND, ILLINOIS 61299-6000

Agreement. If requested by ICI, the SUBCONTRACTOR, at the SUBCONTRACTOR'S expense, shall provide ICI with certified copies of all insurance policies required by this Agreement.

c. Personal Property Coverage. The SUBCONTRACTOR shall be responsible for and at "All Risk" for any loss of or damage to SUBCONTRACTOR owned personal property at the Facilities. The SUBCONTRACTOR should consider providing insurance coverage for this risk. The SUBCONTRACTOR hereby agrees that SUBCONTRACTOR shall not make any claim to ICI for any loss or damage to SUBCONTRACTOR'S personal property at the Facilities for any reason, including but not limited to, leaking roofs, fire, destruction of the Facilities and theft.

9. **ORDINANCES, STATUTES AND PERMITS**

The SUBCONTRACTOR shall conduct its activities at VAAP in compliance at all times with all applicable city, county, state or federal statutes, regulations and ordinances and the SUBCONTRACTOR shall obtain and maintain, at the SUBCONTRACTOR'S own cost and expense, any and all licenses, consents, and permits necessary to the SUBCONTRACTOR'S occupancy or use of the Facilities. During any License Term the SUBCONTRACTOR may not use, or permit any other person to use the Facilities, or any part thereof, for any purpose or in any manner that is in violation of any applicable statutes, regulations, ordinances, licenses, consents, or permits.

10. **INDEMNIFICATION AND DEFENSE**

a. Indemnification. The SUBCONTRACTOR shall indemnify, hold harmless and defend ICI (and ICI's affiliate companies and the officers, directors, employees, subcontractors, shareholders, and agents of ICI and ICI's affiliate companies) and the United States Army for, from and against any claim, demand, cause of action, loss, damage and expense (including, without limitation, any legal or other expenses reasonably incurred in connection with defending or investigating any such claim, demand, loss, or cause of action), including, without limitation, for any injury, death or property loss or damage made or suffered by any third party, or for any event arising out of the conduct or management of the SUBCONTRACTOR'S use of the Facilities or from any breach on the part of the SUBCONTRACTOR of any of the SUBCONTRACTOR'S obligations under this Agreement or by any negligent act or omission of the SUBCONTRACTOR or any of its directors, officers, subcontractors, employees, agents or invitees WHETHER OR NOT ALSO ARISING OUT OF THE ORDINARY NEGLIGENCE OF ICI OR ANY OF ITS DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR INVITEES WITH REGARD TO THE CARE, CONDITION AND MAINTENANCE OF THE FACILITIES PRIOR TO THE DELIVERY OF THE POSSESSION OF THE FACILITIES BY ICI TO THE SUBCONTRACTOR.

Initials ______ ______



... OPERATIONS COMMAND ... ISLAND, ILLINOIS 61299-6000

b. Defense. The SUBCONTRACTOR agrees that the SUBCONTRACTOR will cooperate with ICI in ICI's investigation of any claim or defense of any suit made or brought by any third party against ICI or the United States Army relating to the use of the Facilities. The SUBCONTRACTOR, upon request of ICI, shall retain counsel reasonably satisfactory to ICI to represent ICI or any other indemnified party referred to in 10(a). The SUBCONTRACTOR shall not, without the prior written consent of ICI or other indemnified party under 10(a), affect any settlement of any claim, demand or cause of action subject to 10(a) unless the settlement includes an unconditional release of any such indemnified party from all liability from such claim, demand or cause of action.

## 11. PROPERTY TAXES

The Annual License Fee is exclusive of any property taxes that may be assessed against the Facilities by any city, county or state taxing authority. If any property taxes are assessed against the Facilities, the SUBCONTRACTOR hereby agrees to and shall pay (either to ICI or the applicable taxing authority) any such taxes whether assessed by the taxing authority directly to the SUBCONTRACTOR or to ICI (if payable to ICI the SUBCONTRACTOR shall pay ICI within ten (10) days after ICI's invoice date).

## 12. ENVIRONMENTAL CONDITIONS

a. General Duty of Care. The SUBCONTRACTOR shall conduct its activities at VAAP in a manner that employs all reasonable means available to protect the environment and natural resources of VAAP.

b. Hazardous Substances. The SUBCONTRACTOR shall not treat, dispose, bring, use or store at VAAP any Hazardous Substances (as defined by 42 USC, Section 9601 (14) and implementing regulations, and for the purposes of this Agreement, Hazardous Substances shall include any petroleum product or waste or any fraction thereof), unless the SUBCONTRACTOR first obtains ICI's written consent and ICI's consent shall not be unreasonably withheld provided such Hazardous Substances are required for the operation and maintenance of the Facilities. The SUBCONTRACTOR shall submit to ICI, and also keep at the Facilities, a copy of the Material Safety Data Sheet for each Hazardous Substance that the SUBCONTRACTOR uses or stores at the Facilities.

c. Releases. If any activity of the SUBCONTRACTOR results in a release of any Hazardous Substance to the environment at VAAP, the SUBCONTRACTOR shall immediately notify ICI and act promptly and diligently, at the SUBCONTRACTOR'S expense and in compliance with all applicable laws, regulations, ordinances, orders, agreements and directives to mitigate and correct any damage to natural resources at or adjacent to VAAP. Further, the

Initials



DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY INDUSTRIAL OPERATIONS COMMAND
ROCK ISLAND, ILLINOIS 61299-6000

SUBCONTRACTOR shall correct or terminate any activity within the SUBCONTRACTOR'S control on the Facilities immediately upon discovering that such activity poses an imminent danger to the environment at VAAP.

d. Corrective Action Plans. If any government agency of competent authority or ICI determines that a corrective action plan must be prepared prior to the remediation of a release or threatened release of Hazardous Substances, and if such release is caused by the SUBCONTRACTOR'S activities on the Facilities then the SUBCONTRACTOR, at the SUBCONTRACTOR'S sole expense, shall prepare and submit the required plans and financial assurances, and implement and complete the approved plans to ICI and the agency's satisfaction.

e. Closure. At the conclusion of this Agreement, the SUBCONTRACTOR shall effect closure of its operations at VAAP in accordance with the closure plan set forth in any permit it may have with respect to those activities. If the SUBCONTRACTOR'S closure activities render any part of VAAP unusable, the SUBCONTRACTOR shall compensate ICI, on a monthly basis until the closure activities have been completed to the satisfaction of the appropriate governmental agencies and ICI, for the loss of use of the part of VAAP effected.

f. Data. The SUBCONTRACTOR shall have a continuing duty to provide to ICI, at the SUBCONTRACTOR'S expense, all information concerning any environmental release or impact of the SUBCONTRACTOR'S activities at VAAP during the effective period of this Agreement. The SUBCONTRACTOR shall furnish ICI true and complete copies of all reports, submissions, inspections, notices, orders, directives, findings and correspondence and other materials pertinent to the SUBCONTRACTOR'S compliance with applicable laws and regulations as such are issued or received by the SUBCONTRACTOR.

g. Environmental Indemnity. The SUBCONTRACTOR agrees to protect, defend, indemnify and save harmless ICI (and ICI's affiliate companies and the officers, directors, employees, subcontractors, shareholders, and agents of ICI and ICI's affiliate companies) and the United States Army from and against all liabilities, obligations, claims, damages, penalties, lawsuits or administrative actions, response and cleanup costs, and all other costs and expenses (including, without limitation, attorney's fees, consulting fees, costs of investigation, and costs of remediation), imposed upon or incurred by or asserted against ICI (and ICI's affiliate companies and the officers, directors, employees, subcontractors, shareholders, and agents of ICI and ICI's affiliate companies) and the United States Army by reason of any adverse environmental conditions caused by the SUBCONTRACTOR'S activity at the Facilities.

h. Survival of Provision Upon Termination of Agreement. This Article 12 shall survive the expiration or sooner termination of this Agreement.

Initials

## 13. DEFAULT BY THE SUBCONTRACTOR

If the SUBCONTRACTOR shall allow any payment required hereunder this Agreement to be in arrears more than thirty (30) days after written notice of such delinquency (only one such written notice and only one such opportunity to cure shall be allowed during any 360 day period), or shall remain in default under any other condition of this Agreement for a period of thirty (30) days after written notice from ICI (only one such written notice and only one such opportunity to cure shall be allowed during any 360 day period), or should any other person than the SUBCONTRACTOR secure possession of the Facilities, or any part thereof, by reason of any receivership, bankruptcy proceedings, or other operation of law in any manner whatsoever, ICI may, without notice to the SUBCONTRACTOR, terminate this Agreement, take possession of the Facilities and remove all persons and property therefrom, without being deemed guilty in any manner of trespass, and relicense the Facilities, or any part thereof, at such fees as ICI may with reasonable diligence be able to secure. Should ICI be unable to relicense after reasonable efforts to do so, or should such fees be less than the fees or payments the SUBCONTRACTOR was obligated to pay under this Agreement plus the expense of relicensing, then the SUBCONTRACTOR shall pay the amount of such deficiency to ICI.

## 14. DEFAULT BY ICI

If ICI defaults in the performance of any term, covenant, or condition required to be performed by it under this Agreement, the SUBCONTRACTOR may elect any one of the following:

a. After not less then thirty (30) days written notice to ICI, the SUBCONTRACTOR may remedy such default by any necessary action, and in connection with such remedy, may pay expenses and employ counsel; all sums expended or obligations incurred by the SUBCONTRACTOR in connection therewith shall be paid by ICI to the SUBCONTRACTOR on demand, and on failure of such reimbursement, the SUBCONTRACTOR may in addition to any other right or remedy that the SUBCONTRACTOR may have, deduct the cost and expenses thereof from fees subsequently becoming due hereunder this Agreement; or

b. Elect to terminate this Agreement on giving at least thirty (30) days written notice to ICI of such intention, thereby terminating this Agreement on the date designated in such notice, unless ICI shall have cured such default prior to expiration of the thirty-day period.

Initials

15. **STANDARD PROVISIONS**

a. Entry And Inspection. The SUBCONTRACTOR shall permit ICI to enter upon the Facilities at reasonable times and upon reasonable notice for the purpose of inspecting the Facilities.

b. Eminent Domain. If the Facilities or any part thereof, or any other part of VAAP materially affecting the SUBCONTRACTOR'S use of the Facilities, shall be taken by eminent domain, or the United States Army's exercise of its rights in the event of a National Emergency, Mobilization, of other such event being declared by the President, Congress, the Secretary of Defense, or the Secretary of the Army of the United States of America this Agreement shall terminate on the date specified by the United States Army. The Annual License Fee, and any additional charges, shall be apportioned as of the termination date, and any Annual License Fee paid for any period beyond that date shall be refunded to the SUBCONTRACTOR.

c. Assignment By The Subcontractor. The SUBCONTRACTOR shall not have the right to assign this Agreement, any interest of this Agreement, or to sub-license the Facilities without the prior written consent of ICI.

d. Assignment By ICI. ICI is expressly given the right to assign any or all of ICI's interest in this Agreement.

e. Legal Construction. In case any one or more of the provisions contained in this Agreement shall be held to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other provision and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

f. Prior Agreements. This Agreement constitutes the sole and only Agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter.

g. Amendment. No amendment, modification, or alteration of the terms herein shall be binding unless the same be in writing, dated subsequent to the date hereof, and duly executed by the parties hereto.

h. Rights And Remedies. The rights and remedies provided by this Agreement are cumulative and the use of any one right or remedy by either party shall not preclude or waive its right to use any or all other remedies. Said rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance, or otherwise.

Initials

i. Waiver Of Default. No waiver by the parties hereto of any default or breach of any term, condition, or covenant of this Agreement shall be deemed to be a waiver of any other default or breach of the same or any other term, condition, or covenant contained herein.

j. Attorney's Fees. In the event ICI or the SUBCONTRACTOR breaches any of the terms of this Agreement whereby the party not in default employs attorneys to protect or enforce its rights hereunder and prevails, then the defaulting party agrees to pay the other party reasonable attorney's fees and other expenses so incurred by such other party.

k. Force Majeure. Neither party to this Agreement shall be required to perform any term, condition, or covenant in this Agreement so long as such performance is delayed or prevented by force majeure, which shall mean acts of God, strikes, lockouts, material or labor restrictions by any governmental authority, civil riots, floods, and any other cause not reasonably within the control of either party and which by the exercise of due diligence of either party is unable, wholly or in part, to prevent or overcome.

l. Payments. All payments of moneys due ICI by the SUBCONTRACTOR under this Agreement shall be remitted to ICI's Controller, at VAAP, or to such designee as selected at the sole option of ICI. If the SUBCONTRACTOR fails to make any payments due under this Agreement by the due date to which such payments applies, the SUBCONTRACTOR shall pay a late fee in the amount equal to 1 1/4% per month (15% per year) of the overdue amount of any such payment due under this Agreement.

m. Notices. Any written notice which either party may or is required to give, shall be given by mailing the same, first class postage prepaid, to the SUBCONTRACTOR at the Facilities, or ICI at VAAP, or at such other places as the parties may designate by written notice.

n. Attornment. Upon any termination of ICI as the Contractor for the use of VAAP, the SUBCONTRACTOR shall attorn to the United States Army, or at the option of the United States Army, its subsequent contractor, and recognize the United States Army, or its subsequent contractor, as ICI under this Agreement.

o. Special Terms And Conditions. See Appendix "D".

p. Governing Law. This Agreement and the rights and obligations of the parties hereto shall be governed, construed and enforced in accordance with the laws of the State of Tennessee.

q. Headings. Headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

Initials

r. Historical Preservation. The SUBCONTRACTOR shall not remove, or disturb, or cause or permit to be removed or disturbed, at the Facilities any historical, archeological, architectural or other cultural artifacts, relics, vestiges, remains or objects of antiquity. In the event such items are discovered on the Facilities, the SUBCONTRACTOR shall immediately notify ICI and such items shall be protected by the SUBCONTRACTOR from further disturbance until a professional examination of such items can be made or until clearance to proceed is authorized by ICI.

s. Guarantor. ICI shall require that Xavier Corporation guarantee payment by the SUBCONTRACTOR of all amounts due, when due, under this Agreement in the form attached hereto as Appendix E.

t. Employee Hiring. Neither parties to this Agreement shall knowingly hire, or solicit the hiring of, any employee, consultant or subcontractor of the other party without the expressed written consent of said other party.

u. ICI Proprietary Information. Each page of this Agreement is labeled ICI PROPRIETARY INFORMATION and the SUBCONTRACTOR shall not disclose this Agreement, whether this document is executed or unexecuted, to a third party without the expressed written consent of ICI and ICI shall not withhold such written consent if disclosure of this Agreement by the SUBCONTRACTOR is required by law.

**IN WITNESS WHEREOF,** the undersigned hereby execute this Agreement effective as of the 6th day of July, 1996.

ICI:

BY: ______________________
Charles S. Saunders
Vice President of Government Operations
ICI Americas Inc.

SUBCONTRACTOR:

BY: ______________________
Ted J. Kowalski, Jr.
President
Xavier Chemical Company

GUARANTOR:

______________________
Chris Dittmar
Chairman, President & CEO
Xavier Corporation
1600 Smith Street
Suite 4230
Houston, Texas 77002

Initials

# APPENDIX A

## FACILITIES

The Facilities (see MAP attached hereto as Appendix F) shall consist of the following facilities at VAAP and the land immediately adjoining same:

1. The following buildings and equipment:

| Building | Description |
|---|---|
| 104 | Sulfuric Acid |
| 107 | Acid Lab (Approximately 50% Only. As Agreed To By ICI) |
| 115 | Cooling Tower |
| 113-1-3 | Sellite Storage |
| 101 | Acid Storage & Related Loading Facilities |
| 113-1-2 | Soda Ash Storage |
| 520-4 | Liquid Sulfur Storage |
| 520-5 | Fuel Storage |
| 412-1 | Packaged Sewer Treatment Plant (See Item 4) |

2. The land immediately adjacent to and between the buildings and facilities in Item 1 above excluding the roadways.

3. The gas service lines from the gas utility company meter at VAAP to the Facilities and the electric power distribution system from electric substation 401-2 at VAAP; however, if another subcontractor licenses the use of facilities at VAAP that requires the co-use of either the aforestated gas service lines or the aforestated electric power distribution system, the SUBCONTRACTOR shall thereafter have non-exclusive rights to these Facilities and ICI shall determine the split of responsibilities (including costs of operation and maintenance) between the SUBCONTRACTOR and such other subcontractor at the sole discretion of ICI whose discretion shall not be unreasonable.

4. If another subcontractor licenses the use of facilities at VAAP that requires the co-use of the Packaged Sewer Treatment Plant, the SUBCONTRACTOR shall thereafter have non-exclusive rights to these facilities and ICI shall determine the split of responsibilities (including costs of operation and maintenance) between the SUBCONTRACTOR and such other subcontractor at the sole discretion of ICI whose discretion shall not be unreasonable.

Initials ____



DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY ... OPERATIONS COMMAND
ROCK ISLAND, ILLINOIS 61299-6000

APPENDIX A continued

5. Included in the Facilities are the non-exclusive use of Gate 3D at VAAP and Gate 3D's egress and ingress onto a State Highway; however, the SUBCONTRACTOR, at the SUBCONTRACTOR'S expense, shall be responsible for any alterations to Gate 3D and the roadway ingress and egress to and from VAAP.

6. Spare parts and catalyst for the buildings and facilities in Item 1 above are excluded from the Facilities. Some spare parts are available at VAAP for the Facilities and a detailed listing of such spare parts along with the cost basis of such spare parts (circa 1970's) has been provided to the SUBCONTRACTOR and the SUBCONTRACTOR hereby acknowledges the receipt of such listing which is titled "Property Master by Property Number for 41-000001 thru 42-001545" and during any License Term of this Agreement, the SUBCONTRACTOR, at the sole option of the SUBCONTRACTOR, shall have the right to purchase said spare parts, individually or collectively, at a price equal to 1.5 times the cost basis in the aforementioned listing. All payments for the purchase of said spare parts shall be made by the SUBCONTRACTOR to ICI prior to the delivery of said spare parts by ICI to the SUBCONTRACTOR. ICI has no obligation to maintain said spare parts at VAAP and ICI may sell or otherwise dispose of said parts without obligation to the SUBCONTRACTOR; however, ICI will use ICI's best efforts to inform the SUBCONTRACTOR prior to any sale or disposal of said spare parts so that the SUBCONTRACTOR shall have the opportunity, at the sole option of the SUBCONTRACTOR, to purchase said spare parts. The SUBCONTRACTOR is under no obligation to purchase said spare parts.

7. Included in the Facilities are the non-exclusive use of the barge facilities at VAAP; however, the SUBCONTRACTOR, at the SUBCONTRACTOR'S expense, shall be responsible for any alterations to the barge facilities that are needed due to the SUBCONTRACTOR'S use of the barge facilities

8. Included in the Facilities are the non-exclusive use of the railroad facilities at VAAP; however, the SUBCONTRACTOR, at the SUBCONTRACTOR'S expense, shall be responsible for any alterations to the railroad facilities that are needed due to the SUBCONTRACTOR'S use of the railroad facilities The SUBCONTRACTOR shall have the right to negotiate directly with the railroad(s) in order to establish the SUBCONTRACTOR'S necessary rail service contracts for rail service operation for the SUBCONTRACTOR at VAAP and any necessary approvals required by ICI will not be unreasonably withheld by ICI.

9. The SUBCONTRACTOR shall expend the necessary funds (estimated to be approximately $6,700,000) to modify and expand the Facilities in accordance with the following Scope of Work (all designs for same must be reviewed and approved by ICI): The upgrade and restart of the Facilities to a capacity of approximately 500 tons per day of sulfuric acid including conversion of the Sulfuric Acid Plant from a single absorption process to a double absorption process, conversion of the Sulfuric Acid Plant from

Initials

APPENDIX A Continued

primarily upgrading weak sulfuric acid to full strength sulfuric acid to a process whereby various grades of sulfuric acid are manufactured primarily from the oxidation of elemental sulfur, and conversion of the Facilities to meet current technological and environmental standards.

Initials ____ ____



DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY ARMAMENT, MUNITIONS AND CHEMICAL COMMAND
ROCK ISLAND, ILLINOIS 61299-6000