# Attachment 2
# Pages 41 - 60

## APPENDIX B

### ANNUAL LICENSE FEE

The Annual License Fee shall be an amount equal to a Percentage of SUBCONTRACTOR'S Gross Annual Sales (as herein defined) per the following schedule or the minimum Annual License Fee specified below, whichever is greater:

| Gross Annual Sales | Percentage |
|---|---|
| Computed on the first $2,500,000 of Gross Annual Sales | 1.00% |
| Computed on the next $2,500,000 of Gross Annual Sales | 1.25% |
| Computed on the next $2,500,000 of Gross Annual Sales | 1.50% |
| Computed on the next $2,500,000 of Gross Annual Sales | 1.75% |
| Computed on all Gross Annual Sales in Excess of $10,000,000 | 2.00% |

SUBCONTRACTOR'S Gross Annual Sales shall be defined as all invoices of SUBCONTRACTOR, all subsidiary companies of SUBCONTRACTOR and all affiliated companies of SUBCONTRACTOR, less any sales and use taxes, invoiced in SUBCONTRACTOR'S fiscal year for SUBCONTRACTOR'S business performed at VAAP using the Facilities.

Within 90 days after the end of SUBCONTRACTOR'S fiscal year, SUBCONTRACTOR shall cause to be delivered to ICI an audit of SUBCONTRACTOR'S financial statements by an independent public accounting firm acceptable to ICI, all at SUBCONTRACTOR'S expense. The audit, in addition to the usual and customary information found in a CPA's audit, shall state the SUBCONTRACTOR'S Gross Annual Sales for the previous License Term Year.

The Annual License Fee shall be computed based upon SUBCONTRACTOR'S Gross Annual Sales, as reported by the SUBCONTRACTOR'S financial statements, for each License Term Year and when the CPA's audit is available the Annual License Fee shall be retroactively adjusted, if applicable.

ICI, at ICI's expense, shall also have the right to audit SUBCONTRACTOR'S financial records for determination of SUBCONTRACTOR'S gross annual sales during normal business hours of the SUBCONTRACTOR.

The minimum Annual License Fee shall be $50,000. Notwithstanding anything else written herein this Agreement, the maximum Annual License Fee for License Term Years 1,2, 3, 4, 5, 6, and 7 shall be $50,000 and the maximum Annual License Fee for License Term Years 8, 9, and 10 shall be $100,000.

Initials ______ ______

## APPENDIX C

## UTILITY RATES

1. Water Service. The SUBCONTRACTOR shall pay ICI a Monthly Utility Fee for water service at the rate of $1.00 per 100 cubic feet. If the actual amount of monthly service provided computes to an amount less than $25.00, the Monthly Utility Fee for water service shall be a minimum of $25.00.

2. Electric Service. The SUBCONTRACTOR shall pay ICI a Monthly Utility Fee for electric service at the rate of $.0587 per kilowatt hour. If the actual amount of monthly service provided computes to an amount less than $25.00, the Monthly Utility Fee for electric service shall be a minimum of $25.00.

Initials

# APPENDIX D

## SPECIAL TERMS AND CONDITIONS

1. SUBCONTRACTOR signage shall be permitted only with the expressed written approval of ICI of the type, size and location of the signage.

2. The SUBCONTRACTOR shall not permit welding, burning, or open flames without expressed written approval of ICI.

3. Keys, if any, for the Facilities will be provided to the SUBCONTRACTOR, and the SUBCONTRACTOR shall have the right to revise locking without the written consent of ICI; however, the SUBCONTRACTOR shall be required to always give a current set of duplicate keys to ICI. When the Facilities are vacated upon termination of the Agreement, the SUBCONTRACTOR shall surrender all keys to ICI.

4. VAAP shall be open during normal business hours on Monday through Friday, excluding standard holidays; however, the SUBCONTRACTOR may have access to VAAP twenty-four (24) hours per day, seven (7) days a week.

5. The SUBCONTRACTOR shall have ingress and egress to the Facilities and the SUBCONTRACTOR is expected to follow the most direct route when traveling to and from the Facilities; access to other areas of VAAP is prohibited.

6. The SUBCONTRACTOR acknowledges that the use of additional VAAP facilties beyond those described in Appendix A of this Agreement is prohibited.

7. The Facilities shall not be used for lodging or sleeping.

8. The SUBCONTRACTOR shall not permit the loud play of radios or musical instruments, or other unseemly noises on the Facilities.

9. VAAP is a no smoking facility. Smoking must be limited to designated outdoor smoking areas as approved by ICI.

10. The SUBCONTRACTOR and the SUBCONTRACTOR'S employees and visitors will observe and obey all posted rules and regulations of VAAP.

11. The SUBCONTRACTOR shall practice prudent energy or resource conservation in regard to the use of utilities supplied to the SUBCONTRACTOR by ICI.

Initials ______ ______

## APPENDIX E

## GUARANTY

This GUARANTY is given by the undersigned to ICI Americas Inc. ("ICI"), its successors and assigns, relating to that certain Facilities Use Agreement, dated July 6, 1996 ("Agreement") between ICI and Xavier Chemical Company (SUBCONTRACTOR").

Recitals

The SUBCONTRACTOR desires to enter into the Agreement under which the SUBCONTRACTOR shall be required to make substantial payments to ICI. The undersigned desire to assist the SUBCONTRACTOR in inducing ICI to enter into the Agreement with the SUBCONTRACTOR. It is therefore agreed:

1. Obligation. To enable the SUBCONTRACTOR to enter into the Agreement, the undersigned jointly and severally guarantee to pay when due or as they become due, all amounts payable by the SUBCONTRACTOR to ICI under the Agreement which are not paid by the SUBCONTRACTOR when due and to cause to be performed when due all other obligations of the SUBCONTRACTOR under the Agreement.

2. Primary Obligation. The undersigned shall be bound upon this guaranty as if the obligations guaranteed were the primary obligations of the undersigned. ICI shall not be required to proceed against the SUBCONTRACTOR prior to proceeding to enforce this instrument.

3. Waiver. Demand for payment, notice of default or nonpayment, protest, and notice of protest are hereby waived by the undersigned.

In witness whereof this instrument has been signed and sealed on 08/01, 1996.

Chris Dittmar
Chairman, President, & CEO
Xavier Corporation
1600 Smith Street
Suite 4230
Houston, Texas 77002

Initials




APPENDIX F
MAP
LIMITS OF ACID
PLANT AREA

Initials ________

ATTACHMENT 2

## FACILITIES

The Facilities shall consist of the following facilities at VAAP and the land immediately adjoining same:

1. The following buildings and equipment:

| Facility | Description |
|---|---|
| 101 | *Acid Storage & Loading*: 640 sq. ft. includes 9 storage tanks with a total storage capacity of 3,969,000 gallons. |
| 104 | *Sulfuric Acid Regeneration Unit*: 1890 sq. ft., includes sulfuric acid/oleum production unit and control building. |
| 107 | *Acid Laboratory*: 1,427 sq. ft. (Total facility is 2,854 sq. ft., but only half is being considered under this agreement) |
| 113-1-2 | *Soda Ash Unloading & Storage*: Includes Rail car unloading system, weather shelter and 1 storage tank with a total storage capacity of 68,000 gallons |
| 113-1-3 | *Sellite Storage & Loading Facility*: Includes loading dock and 5 sellite collection/storage tanks with a total storage capacity of 372,000 gallons. |
| 115 | *Cooling Tower*: 4 cell cooling tower with pump pit and water pumping facilities. |
| 520-4 | *Sulfur Storage Facility*: Includes sulfur storage tank, with dike structure and a total capacity of 30,500 gallons, and sulfur unloading system. |
| 520-5 | *Fuel Oil Storage*: Includes 1 fuel oil storage tank with dike structure, transfer pumps, unloading pumps and a total storage capacity of 158,000 gallons. |

2. The land immediately adjacent to and between the buildings and facilities in Item 1 above excluding the roadways.

3. Spare parts and catalyst for the buildings and facilities in Item 1 above are exclude.

2. AMENDMENT/MODIFICATION NO. P00004

3. EFFECTIVE DATE 31 MAR 1998

4. REQUISITION/PURCHASE REQ. NO. See Schedule

5. PROJECT NO. (If applicable) ACN

6. ISSUED BY CODE W52P1J
HQ IOC
AMSIO-ACG-A
RUDY HERNANDEZ /309-782-5150
ROCK ISLAND IL 61299-6000

7. ADMINISTERED BY (If other than Item 6) CODE

SCD C PAS NONE ADP PT W52H09

8. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State and ZIP Code)
ICI AMERICAS INC
CONCORD PLAZA, 3411 SILVERSIDE RD.
P.O. BOX 15391
WILMINGTON, DELAWARE 19850

CODE 0VX27 FACILITY CODE

(X) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACT/ORDER NO. DAAA0994E0017

10B. DATED (SEE ITEM 13) 94NOV22

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods:
(a) By completing Items 8 and 15, and returning ____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
No change to obligation data
G

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

(X) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT/ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

X C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: 52.243-1

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

See second page for description.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
Charles S. Saunders, VP
Government Operations

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
SUSAN M. MCKINNIS
CONTRACTING OFFICER

15B. CONTRACTOR/OFFEROR
C. S. Saunders
(Signature of person authorized to sign)

15C. DATE SIGNED 3-30-98

16B. UNITED STATES OF AMERICA
BY Susan M. McKinnis
(Signature of Contracting Officer)

16C. DATE SIGNED 31 MAR 1998

NSN 7540-01-152-8070
PREVIOUS EDITIONS UNUSABLE
30-105-02
STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

Case 1:03-cv-01823-BAF Document 8-4 Filed 10/03/2003 Page 9 of 21



SECTION A - SUPPLEMENTAL INFORMATION

A-.
THE PURPOSE OF THIS MODIFICATION (P00004) TO VOLUNTEER AAP CONTRACT DAAA09-94-E-0017 IS TO MODIFY THE EXPIRATION DATE FROM 22 NOVEMBER 1999 TO 31 DEC 1998 PER MUTUAL AGREEMENT OF THE PARTIES. THE REVISION OF THE EXPIRATION DATE IS IN NO CIRCUMSTANCES TO BE DEEMED AS A TERMINATION FOR CONVENIENCE OF THE GOVERNMENT AND THE PARTIES AGREE THAT THERE ARE NO COSTS ASSOCIATED WITH THIS CHANGE.

(End of narrative A004)

**XAVIER CHEMICAL CO.** 09/96
2555 Cumberland Pkwy.
Suite 170
Atlanta, Ga. 30339

64-6/610
61200

1536

June 2, 2000

PAY TO THE ORDER OF Tecumseh Professional Associates $ 288.00

Two hundred eighty eight and 00/100 DOLLARS

**NationsBank**
NationsBank of Georgia, N.A.

FOR Invs VHAP-TEC-MAINT - 006, 007, 008

⑈001536⑈ ⑆061000052⑆ 325 161 1796⑈ ⑉0000028800⑉

ENDORSE HERE

x Tecumseh Professional

PAY TO THE ORDER OF Associates, Inc.
NORWEST BANK
FOR DEPOSIT ONLY
TECUMSEH PROFESSIONAL
ASSOCIATES, INC.

DO NOT SIGN / WRITE / STAMP BELOW THIS LINE
FOR FINANCIAL INSTITUTION USAGE ONLY

WELLS FARGO

WELLS FARGO BANK NEW MEXICO
PO BOX 53470
PHOENIX, AZ 85072-3470

TECUMSEH PROFESSIONAL
ASSOCIATES INC
11930 MENAUL BLVD NE STE 219
ALBUQUERQUE, NM 871122461

ITEMS ENCLOSED:

PAGE 1 OF 1 ACCOUNT CHARGED 1060170140 DATE: 07-05-2000

YOUR ACCOUNT HAS BEEN CHARGED FOR THE FOLLOWING ITEM(S) RETURNED UNPAID. ITEM(S) MARKED WITH AN (*) HAVE BEEN REDEPOSITED PER INSTRUCTION AND DO NOT AFFECT YOUR ACCOUNT BALANCE.

| | REASON FOR NON PAYMENT | SEQUENCE # | AMOUNT |
|---|---|---|---|
| DEPOSITORY ACCOUNT#: 1060170140 | | | |
| | NSF 1ST TIME | 006100153146 | 288.00 |

| | |
|---|---|
| TOTAL CHARGE: | 288.00 |
| TOTAL FEES ASSESSED: | 0.00 |
| TOTAL REDEPOSIT: | 0.00 |

SHOULD YOU HAVE ANY QUESTIONS OR REQUIRE ADDITIONAL INFORMATION, PLEASE CALL THE PHONE NUMBER THAT IS LISTED ON YOUR BANK STATEMENT.

TOTAL P.01

**DEPARTMENT OF THE ARMY**
HEADQUARTERS, U.S. ARMY OPERATIONS SUPPORT COMMAND (PROV)
1 ROCK ISLAND ARSENAL
ROCK ISLAND, ILLINOIS 61299-6000

REPLY TO
ATTENTION OF

AMSOS-CCM-E

August 17, 2000

Mr. Ted Kowalski, President
Xavier Chemical Company
3020 Roswell Road, N.E., Suite 200
Marietta, GA 30062

Dear Mr. Kowalski:

This is to inform you that your check number 1536 dated June 1, 2000 paid to the order of Tecumseh Professional Associates in the amount of $288.00 was returned by Wells Fargo Bank New Mexico on July 5, 2000 for insufficient funds. This payment was due on July 1, 2000. Furthermore the following invoices VAAP-TEC-Maint-0009, 0019, 0011 and 0012, dated June 22, 2000 are outstanding. In accordance with your agreement, any fees for utility services supplied shall be paid monthly within 15 days of invoice date.

In addition to the above mentioned transaction, check number 1573 dated July 28, 2000 paid to the order of HQ-IOC Volunteer Account in the amount of $50,000.00 was returned by SunTrust Bank on July 8, 2000 for insufficient funds. A service charge of $3.00 was charged to our account. The due date for this payment was August 1, 2000.

As stated in your agreement, if payments are not made by the due date to which such payment applies, a late fee in the amount equal to 1¼ % per month (15% per year) of the overdue amount is required.

You are hereby notified that Xavier Chemical Company is in default under the Facilities Use Agreement with the U.S. Army for failure to pay the annual License Fee and other charges as specified in your agreement. Formal demand is hereby made for payment of all amounts owing. This shall include the $3.00 service charge and appropriate late fees. The late fees shall be calculated from the due dates of the payments to the date payments are actually made. Any partial months shall be treated as a full 30-day period for calculation purposes. If payments by cashier's check or certified money order are not received within thirty (30) days of the date of this letter, the U.S. Army will have no choice but to pursue all legal remedies available to collect amounts owing and to retake possession of the premises.

Request you take action in relation to this matter as quickly as possible. The current situation is not acceptable to the U. S. Army. Please contact Mr. William Watson, Tecumseh Professional Associates, Inc., (423) 855-7138, or Mr. Bobby G. Holloway, Commander's Representative, (423) 893-5121, immediately to resolve this matter.

Thank you for your prompt and serious consideration of this matter.

Sincerely,

Kathryn A. Ortel

KATHRYN A. ORTEL
Contracting Officer

Copies furnished:

Mr. William Watson, Tecumseh Professional Associates, Inc.

Mr. Bobby G. Holloway, Commander's Representative

Mr. T. R. Andrake, Xavier Chemical Company

DEPARTMENT OF THE ARMY
Volunteer Army Ammunition Plant
P.O. Box 22607
Chattanooga, Tennessee 37422-2607

SMAVO-CR 24 Aug 2000

MEMORANDUM FOR Commander, U.S. Army Operations Support Command,
ATTN: AMSOS-GCE (Mr. Rick Murphy),
1 Rock Island Arsenal, Rock Island, IL
61299-5500

SUBJECT: Permits for Xavier Chemical

1. On 24 Aug 2000 at 11:30 a.m., I spoke with Mr. Robert Colby, Director of the Chattanooga-Hamilton County Air Pollution Control Bureau (423-867-4321), regarding permits for Xavier Chemical. Mr. Colby informed me that Xavier had submitted a request for permits; however, they returned them to Xavier as totally inadequate.

2. Mr. Colby further stated that Xavier would be required to obtain an installation permit first and have the plant inspected before applying for an operational permit. He understands that Xavier has hired a law firm to look into this matter, but as of this date, the Bureau has not received any calls or submissions.

3. The POC is Bobby Holloway, SMAVO-CR, 423-893-5121, e-mail volunteer-aap@osc.army.mil, Fax 423-893-9726.

FOR THE COMMANDER:

//signed//
BOBBY G. HOLLOWAY
Commander's Representative

CF:
Commander, U.S. Army Operations Support Command,
ATTN: AMSOS-CCG-ARMS (Ms. Kathy Ortel), 1 Rock Island
Arsenal, Rock Island, IL 612999-6000



22

DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY OPERATIONS SUPPORT COMMAND (PROV)
1 ROCK ISLAND ARSENAL
ROCK ISLAND, IL 61299-6000

REPLY TO
ATTENTION OF

AMSOS-CCM-E September 1, 2000

Mr. T.R. Andrake
Xavier Chemical Company
6703 Bonny Oaks Drive
Building 107, Box #2
Chattanooga, TN 37421

Dear Mr. Andrake,

This is in response to your facsimile transmittals on August 7th and August 23rd of this year. As Xavier is not authorized to store railcars at VOAAP, the Operations Support Command (OSC) requests more information as to why Xavier requires Chattanooga Railcar Service (CRS) to clear railroad trackage and why Xavier needs a complete description of every piece of railroad trackage at the Volunteer Army Ammunition Plant (VOAAP).

Your August 23rd facsimile references that the highline at VOAAP does not provide Xavier with enough trackage to operate effectively. This statement is confusing to the OSC as we are not aware of any operations that Xavier is currently conducting at VOAAP. Xavier was granted a facilities use agreement (FUA) by ICI Americas (ICI) to operate an acid plant. Xavier is only permitted to bring railcars on-site in support of their acid plant operations. To the OSC's knowledge, Xavier has not received regulatory approval to begin operating this plant, nor is the initiation of operations expected in the near future. Therefore, the need to bring in railcars in support of the operation of the acid plant does not seem imminent. This is especially true as the rail line in the acid plant area must be repaired before it can be accessed via the highline.

The statement in your August 7th facsimile that Xavier needs access to the entire highline to store cars causes the OSC concern. Xavier is authorized non-exclusive use of the rail lines in support of its operations at the acid plant. It is not authorized to use the rail lines for the storage of rail cars. Furthermore, its use of rail lines cannot interfere with other users of the rail lines, such as CRS.

An additional problem with Xavier's current use of the rail lines at VOAAP is that one of the conditions of Xavier's Right of Entry is to comply with all terms and conditions of its FUA with ICI. However, Xavier is violating Appendix A, paragraph 8 by storing rail cars, which the OSC defines as leaving in place for future use. Xavier should have sought the OSC's approval to ensure their movement of railcars is being conducted in a safe manner in light of the other users. Failure to do so was a violation of Section 7e of Xaiver's FUA as the OSC needs to ensure that Xavier has a safety plan that will ensure two operators can use the same trackage without creating a dangerous situation. If Xavier does not submit such a plan, or cannot establish that two entities

can safety use the trackage concurrently, Xavier must use CRS to move its railcars.

Regardless of whether there is a safety plan for movement of railcars, Xavier must cease storing railcars at VOAAP or enter into an agreement with an entity authorized to store railcars. Currently, CRS is the only such entity. Additionally, absent agreement from other authorized users, the highline can never be used for storage of railcars. Any railcars that are brought on site and are not used for a period exceeding 30 days from the date brought on site or 30 days from the date of this letter, whichever is later, will require payment of a storage charge. Further, prior to bringing additional railcars on-site, Xavier must advise the OSC as to the purpose of doing so.

The OSC expects Xavier to take immediate steps to remedy this potentially dangerous situation. If you feel this letter is in error as to your authority under your Right-of-Entry, or is factually incorrect, please contact me at 309.782.6090.

Sincerely,

//signed//
Kathryn A. Ortel
Contracting Officer

CC:
Mr. Bobby Holloway
Mr. Rick Murphy

# XAVIER CHEMICAL COMPANY

TECUMSEH PROFESSIONAL ASSOCIATES, INC.
Mr. William Watson
Volunteer Army Ammunition Plant
P.O. Box 23306
Chattanooga, Tennessee 37422 –3306

Enclosed please find the following payments which cure the defaults referenced in Kathryn Ortel's letter of August 17, 2000:

1. The Annual License fee of $ 50,000.00
2. A $ 3.00 Service Charge
3. A payment of $ 384.00 covering invoices 009, 0010, 0011and 0012.
4. (Invoices 006, 007, and 008 were paid July 28, 2000 by check # 1572 which Replaced Xavier Chemical Company check 1536)
5. In addition, we have included advance payment of $ 480.00 or the maintainence fee of $96.00/month through December 31, 2000.
6. In addition, the following interest payments are included:
   - 1.25 % x 2 (August,September) on $ 50,000.00 = $ 1,250.00
   - 1.25 % x2 (based on due dates of 7/16 and 8/16/2000 for invoices 009, 0010, 0011, 0012.) = $ 9.60

TOTAL AMOUNT : **$ 52,126.60**

The payment is made per your request by cashier's check/money order. We look forward to working with you and appreciate your assistance in this matter.

Sincerely,

Ted J. Kowalski, Jr.
President
W/enc.

cc: Kathryn Ortel, Department of the Army
Bobby Holloway, Commander's Representative

3020 Roswell Road, NE • Suite 200• Marietta, GA 30062
TEL: (770) 509-2311 • FAX: (770) 509-2306

For GA Use Only 10-14-0262B 7-1999

10-14-0262B 7-1999

PRINTED BY STANDARD REGISTER U.S.A.

**Bank of America**

Drawee Bank: Bank of America, N.A. San Antonio, Texas

172/0102347

Cashier's Check No.

If this check is not returned for cancellation by the remitter or presented for payment by the payee or an endorsee within one year after its date, it will be subject to a nonrefundable dormancy fee of $5.00 per month thereafter.

No. 01924546

Date *** 09/14/00 ******

Pay THE SUM 52 T 26 DOLS 60 CTS

$ *** 52,126.60 *****

to the order of *** HQ - IOC VOLUNTEER ACCOUNT ******
Name
Street
City, State

*** XAVIER CHEMICAL CO. *******
Purchaser

Denise Akvan
Authorized Signature

⑈01924546⑈ ⑆114000019⑆ 001641002500⑈

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

Received by William Watson
from T.R. Andrake on 9-14-00
4:37 P.M.

WW

MILLER & CHEVALIER
CHARTERED

655 FIFTEENTH STREET, N.W., SUITE 900
WASHINGTON, D.C. 20005-5701
(202) 626-5800 FAX: (202) 628-0858

ROBERT K. HUFFMAN
(202) 626-5824
INTERNET: RHUFFMAN@MILCHEV.COM

November 27, 2000

VIA FACSIMILE

Richard Murphy, Esquire
Attorney-Advisor
AMSOS-GC
HQ, Operations Support Command
1 Rock Island Arsenal
Rock Island, IL 61299

Re: Xavier Chemical Company Facilities Use Agreement

Dear Mr. Murphy:

Our firm represents Xavier Chemical Company in connection with its Facilities Use Agreement ("FUA") concerning the Volunteer Army Ammunition Plant ("VAAP") in Chattanooga, Tennessee. Ross Branstetter of our firm previously wrote you a letter dated October 2, 2000 regarding Xavier's rights under the FUA. Since that time Ross has left our firm to join the Office of General Counsel of the DOD Ballistic Missile Defense Organization. I have taken over Ross' responsibilities on the Xavier matter.

I am writing in response to your cover letter dated November 15, 2000 to Mr. T.R. Andrake of Xavier, attaching a letter to Mr. Andrake from Mr. Bobby G. Holloway, the VAAP Commander's representative. Mr. Andrake responded to Mr. Holloway's letter on November 22, 2000. The purpose of this letter is to respond to the points made in your cover letter dated November 15.

I. Authorized Use

Your letter states that Mr. Holloway's letter "is predicated on what is required to support the SAR, which is the only identified use in the FUA." You state that "[i]f Xavier believes other activities, such as 'terminalling' are authorized, please provide[] the OSC as to the authority for such usage."

Mr. Andrake's November 22 response to Mr. Holloway's letter provides the authority for Xavier's position that its scheduled terminalling and transfer activities at the VAAP are encompassed within the operation of the Sulfuric Acid Recovery ("SAR") plant there. Mr. Andrake cites the relevant provisions of the FUA and provides compelling evidence of custom and trade usage, prior course of dealing, and the circumstances surrounding the negotiation of the FUA to support his conclusion that the operation of the SAR plant includes the contemplated

terminalling and transfer activities. Such evidence must be considered in interpreting the FUA. See, e.g., Metric Constructors, Inc. v. NASA, 169 F.3d 747 (Fed. Cir. 1999).

2. 10 U.S.C. § 2692

Your letter states that "if Xavier intends to bring sulfuric acid on-site, for storage and distribution to other parties, or use in its process, it must obtain a waiver under 10 U.S. Code 2692 from the Secretary of the Army." We believe that § 2692 does not apply to the scheduled terminalling and transfer activities and that no waiver is therefore required.

10 U.S.C. § 2692(a)(1) states that "[e]xcept as otherwise provided in this section, the Secretary of Defense may not permit the use of an installation of the [DOD] for the storage, treatment, or disposal of any material that is toxic or hazardous material and that is not owned either by the [DOD] or by a member of the armed forces ...." As a threshold matter, Xavier's scheduled terminalling and transfer operations do not involve the "storage, treatment, or disposal" of any toxic or hazardous material. Xavier will transport sulfuric acid by railcar to a terminalling facility located in the SAR plant area, the acid will be transferred by hoses from the railcars to trucks, and the trucks will transport the acid off-site to Xavier's customers. There will be no emissions, and none of the acid will be left on the VAAP. This is clearly not storage, treatment, or disposal, and clearly not the kind of activity that Congress had in mind when it enacted § 2692.

Furthermore, even if the scheduled activities did involve the storage, treatment, or disposal of hazardous material, § 2692 would not apply. Section 2692(b)(9) states that the prohibition of 2692(a) "does not apply" to the storage of any material not owned by DOD if the Secretary of the Army determines that the material "is required or generated in connection with the authorized and compatible use of a facility of the [DOD]...." The prohibition of 2692(a) likewise "does not apply" to the treatment or disposal of any material not owned by DOD if the Secretary of the Army determines that the material "is required or generated in connection with the authorized and compatible use of a facility of that military department" and the Secretary "enters into a contract or agreement with the prospective user that —

> (A) is consistent with the best interest of national defense and environmental security; and
>
> (B) provides for the prospective user's continued financial and environmental responsibility and liability with regard to the material." [§ 2692(b)(10)].

It is Xavier's position that the determinations required by §§ 2692(b)(9) and (10) were made when the Army approved the FUA between ICI Americas and Xavier and when Xavier attorned to the Army and recognized the Army as ICI for purposes of the FUA. Any other interpretation would require a "waiver" of § 2692(a) each and every time Xavier brought

hazardous materials onto the VAAP. Such a requirement would be flatly inconsistent with a contract for the operation of a SAR plant over a 25-year period with two 25-year options to renew, one of which has already been exercised by Xavier. Furthermore, we doubt that the Army has required or granted a § 2692 waiver to CRS even though CRS is storing hazardous material on the VAAP.

3. Environmental Assessment

Your letter states that "to support any active operations, Xavier must complete an Environmental Assessment as required by the National Environmental Policy Act." An Environmental Assessment is an obligation imposed by statute on the Army, not upon Xavier. While the Army may have "flowed down" this requirement to ICI under its facilities use contract with that company, the FUA does not flow this requirement down to Xavier. Furthermore, now that the Army has attorned to the contractual rights and obligations of ICI, any flow down to ICI has reverted back to the Army.

Your letter also states that the Army "has no record of an EA being completed." However, we are aware that ICI requested funds from the Army in February 1998 to perform an EA and an EBS. We also understand that ICI prepared either an REC, EBS, or EA for all the then-existing tenants at the VAAP. If ICI for some reason failed to perform an EA or other environmental analysis for Xavier, that is not Xavier's fault. Furthermore, we do not believe that CRS has performed an EA even though it is bringing and storing hazardous materials on the VAAP. If that is the case, the Army is unfairly singling Xavier out for application of purported environmental "requirements."

I hope that I have fully responded to the points raised in your November 15 letter. Please call if you have any questions.

Sincerely,

Bob Huffman

Robert K. Huffman