# Attachment 3
# Pages 61- 78

# XAVIER CHEMICAL COMPANY

November 28, 2000

VIA FACSIMILE

Mr. Bob Holloway, COR
Volunteer Army Ammunition Plant
P.O. Box 22607
Chattanooga, TN 37422

**RE: Notice of Materials to be Used for Initial Phase of the SAR Plant Operation**

Dear Mr. Holloway:

In accordance with your letter of November 14, 2000, this serves as Xavier's notice providing the Army with the proper information regarding the materials that will be used on our facility for the initial phase of the sulfuric acid manufacturing plant. As previously described to you, Xavier will be commencing a portion of our overall business operations which includes the transferring of sulfuric acid directly from railcar to truck. Xavier will be bringing in 93% sulfuric acid by railcar and transferring directly to truck for distribution. This operation is consistent with the overall operation of a sulfuric acid plant as described to you in our letter of November 22, 2000.

Xavier will provide the Army with a copy of the MSDS sheets. If you have any questions please feel free to give me a call.

Sincerely yours,

T.R. Andrake
Manager of Business Development

CC: Ted Kowalski

6703 Bonny Oaks Drive • Bldg 107 • Box #2 • Chattanooga, TN 37421
TEL: (423) 553-0714 • FAX: (423) 553-0716

DEPARTMENT OF THE ARMY
Volunteer Army Ammunition Plant
P.O. Box 22607
Chattanooga, Tennessee 37422-2607

REPLY TO
ATTENTION OF:

SMAVO-CR 30 Nov 2000

MEMORANDUM FOR Commander, U.S. Army Operations Support Command (Prov), ATTN: AMSOS-GCE (Mr. Rick Murphy), 1 Rock Island Arsenal, Rock Island, IL 61299-6000

SUBJECT: Railroad Incident

1. On 29 Nov 2000 at approximately 5:15 p.m. (EST), I spoke with Mr. Tim Andrews who works for the Tennessee Valley Railroad Museum (TVRM). Mr. Andrews stated that two tank cars loaded with sulfuric acid had been spotted on the interchange track between the main railroad line on VOAAP's trackage (photos enclosed). These cars are to be brought onsite for Xavier Chemical Company. He also stated two more cars were enroute to VOAAP for Xavier.

2. Mr. Andrews had called me to say he had found the two sulfuric cars had been moved sometime on the morning of 29 Nov 2000. He further stated he did not believe they had been moved by Norfolk Southern and may have been moved by Chattanooga Railcar Services (CRS), another tenant/lessee at VOAAP. Mr. Andrews had no proof of this, but he saw no way for any other railroad to access the tank cars and move them based on where they were spotted. He also said it was apparent that CRS had been moving railcars in this area on 29 Nov 2000. He stated that CRS has the TVRM blocked from access to their cars. At that time I attempted to contact CRS regarding this matter, but their office was closed for the day.

4. This situation could become a serious matter if in fact the cars were moved by CRS. I am not sure if CRS has the proper credentials for movement of hazardous cargo, e.g., sulfuric acid. This could result in an onsite inspection/review by the Federal Railroad Authority regarding activities on VOAAP's railroad network.

5. On 30 Nov 2000 at 9:30 a.m. (EST), I met with Mr. Gaston and Mr. Bradshaw of CRS in my office. I expressed to them that CRS was not to move any hazardous materials on the railroads and they must keep the main lines open and not create any problems for other tenants. They assured me they would cooperate. I also told them that should Xavier or TVRM block ingress/egress to CRS's work areas to call me and I would have the lines cleared. The necessity of working together on the rail network at VOAAP was emphasized and to call if there were any problems.

FOR THE COMMANDER:

Encl
as

Bobby G. Holloway
BOBBY G. HOLLOWAY
Commander's Representative

SMAVO-CR
SUBJECT: Railroad Incident

30 Nov 2000

CF (w/encl):
Commander, U.S. Army Munitions and Armaments Command (PROV), ATTN: SOSMA-ISO (Mr. Kohrell), 1 Rock Island Arsenal, Rock Island, IL 61299-5500
Commander, U.S. Army Munitions and Armaments Command (PROV), ATTN: SOSMA-ISE-R (Mr. Mendoza), 1 Rock Island Arsenal, Rock Island, IL 61299-5500
Commander, U.S. Army Munitions and Armaments Command (PROV), ATTN: SOSMA-ISD (Mr. Gumpert), 1 Rock Island Arsenal, Rock Island, IL 61299-5500
Commander, U.S. Army Operations Support Command, ATTN: AMSOS-CCM-E (Ms. Ortel), 1 Rock Island Arsenal, Rock Island, IL 612999-6000
Commander, U.S. Army Operations Support Command, ATTN: AMSOS-CCG-I (Ms. Padro), 1 Rock Island Arsenal, Rock Island, IL 612999-6000

[illegible] CAR (white)



11/30/2000
0830 AM



11/30/2000
0830 AM



11/30/2000
0830 A.M.



11/30/2000
0830 AM

December 1, 2000

SENT VIA FAX AND MAIL

Mr. Ted Kowalski
President
Xavier Chemical Company
2555 Cumberland Parkway, Suite 170
Atlanta, GA

Dear Mr. Kowalski:

It has been brought to my attention that Xavier Chemical Company has railcars containing sulfuric acid on Volunteer Army Ammunition Plant. These railcars must be immediately removed from federal property as their presence violates 10 U.S. Code 2692 and creates a potential environmental and safety hazard.

I may be reached at (309) 782-3018 or after duty hours at (309) 782-6135.

Sincerely,

Lawrence J. Sowa
Colonel, U.S. Army
Commanding

Copy Furnished:
Xavier Chemical Company - Volunteer Army Ammunition Plant
Mr. Robert K. Huffman, Miller & Chevalier

# XAVIER CHEMICAL COMPANY

December 8, 2000

DEPARTMENT OF THE ARMY
Headquarters, U.S. Army Munitions And Armaments Command
1 Rock Island Arsenal
Rock Island, Illinois 61299-5500

Attention: Mr. Dennis Brogan

Dear Mr. Brogan:

This will address both Colonel, U.S. Army Commanding, Lawrence J. Sowa's letter of December 1, 2000 and your verbal request for written information. We respectfully disagree with the assertions raised in Colonel Sowa's letter. However, we have complied with his request that the railcars (shipped into the Volunteer Army Ammunition Plant (VAAP) site for placement at the facilities Xavier Chemical Company (XCC) licenses under its' Facilities Use Agreement (FUA) with the U.S. Army) be removed from the VAAP site. This was obviously done at additional expense to XCC in an effort to comply with your requests. You also requested a written description, including volume and scope of XCC's planned transfer and related operations. Please find this information attached. We understand you requested this information in order to perform an analysis for a 10-U.S.C. Section 2692 waiver. We are providing this information even though we believe 10-U.S.C. Section 2692 does not apply and that no waiver is required. (This is exemplied by ongoing activities of Chattanooga Railcar Services (CRS) who previously brought in railcars containing hazardous materials). Although we also don't believe we are required to provide an Environmental Assessment under our FUA, we will comply with your request and provide further related information by next week.. We understand as a past practice, you have permited activities to proceed on the site pending completion of any requested Environmental Assessment(s). We urge that be done concerning XCC's transfer and related activities at the VAAP site.

Please let me know should you have any further questions or suggestions.

Sincerely,

Ted J. Kowalski, Jr
President
w/attachment

cc: Bob Huffman Esq., Miller & Chevalier
Wayne Cropp Esq., Grant, Konvalinka and Harrison

3020 Roswell Road, NE • Suite 200• Marietta, GA 30062
TEL: (770) 509-2311 • FAX: (770) 509-2306

# Xavier Chemical Company
## General Description of Transfer Operation
### Prepared For: U.S. Army

The transfer operation is the first phase in the startup of the sulfuric acid plant. It will provide Xavier Chemical Company (XCC) with the opportunity to begin seeding the commercial market prior to the completion of certain construction phases and the eventual manufacture of sulfuric acid. The transfer operation generally consists of transferring 93% sulfuric acid directly from railcar to truck for delivery to customers off site.

Initially two to three railcars of 93% sulfuric acid will be brought to the site for transferring directly to truck. This quantity will slowly increase as deliveries to the customer base is accelerated. In fact, XCC, based on the Facilities Use Agreement commitment, entered into specific long term sales agreements. This also includes the delivery and sales for seeding purposes contemplated herein.

Each railcar contains approximately 100 tons of product, which equates to approximately 13,256 gallons and it will take four trucks to unload one railcar. Thus, each truck will contain approximately 25 tons or 3,256 gallons of product.

The transfer operation will occur at the existing loading and unloading facility located within the SAR Plant operation. All of the necessary environmental and safety controls will be in place. A pollution prevention plan, a spill prevention plan, and a site health and safety plan are in process to be submitted to local authorities and XCC will provide a copy of these documents to the Army.

MILLER & CHEVALIER
CHARTERED

655 FIFTEENTH STREET, N.W., SUITE 900
WASHINGTON, D.C. 20005-5701
(202) 626-5800 FAX: (202) 628-0858

ROBERT K. HUFFMAN
(202) 626-5824
INTERNET: RHUFFMAN@MILCHEV.COM

January 16, 2001

**BY FACSIMILE**

Richard Murphy, Esquire
Attorney-Advisor
U.S. Army Operations Support Command
1 Rock Island Arsenal
Rock Island, IL 61299-6000

**Re: Xavier Chemical Company Facilities Use Agreement**

Dear Mr. Murphy:

Thank you for your letters dated December 20, 2000, and January 11, 2001. As I stated to your colleague, Dennis Bates, after I received the December 20 letter, Xavier Chemical Company ("Xavier") does not agree with the position stated in your letters that the National Environmental Policy Act ("NEPA") requires preparation of an Environment Assessment ("EA") and a 30-day public comment period prior to Xavier's commencing its scheduled sulfuric acid transfer operations at the Sulfuric Acid Regeneration ("SAR") Plant at the Volunteer Army Ammunition Plant ("VAAP"). Nevertheless, Xavier has submitted a draft EA and Finding of No Significant Impact ("FONSI") for the Army's consideration and review and looks forward to working with the Army to expeditiously complete the EA and FONSI process. The purpose of this letter is to set forth the basis for Xavier's disagreement with the position stated in your letters that Xavier's required to obtain a waiver from the Army under 10 U.S.C. § 2692 before it can begin the scheduled transfer operations at the SAR.

As a threshold matter, Xavier's proposed transfer operations do not fall under the purview of § 2692, which states in paragraph (a):

> Except as otherwise provided in this section, the Secretary of Defense may not permit the use of an installation of the Department of Defense for the storage, treatment, or disposal of any material that is a toxic or hazardous material and that is not owned either by the Department of Defense or by a member of the armed forces...

Xavier's proposed transfer of sulfuric acid from railcars to trucks does not constitute "storage, treatment, or disposal." Because the terms "treatment" and "disposal" are not defined in § 2692 or the corresponding regulations, according to fundamental principles of statutory

interpretation, the words must be read as having their ordinary meaning and trade usage. *United States v. James*, 478 U.S. 597, 604, 92 L. Ed. 2d 483, 106 S. Ct. 3116 (1986) ("We assume that the legislative purpose is expressed by the ordinary meaning of the words used."). The transfer of sulfuric acid from railcars to trucks for transport is not encompassed within the ordinary meaning of the terms "treatment" or "disposal," and the chemical industry does not regard transferring sulfuric acid from one container to another for transport as "treatment" or "disposal" of the acid. Consequently, Xavier's proposed transfer operations do not involve treatment or disposal.

Xavier's transfer operations likewise do not involve "storage," which the regulations define to mean:

> a non-transitory, semi-permanent or permanent holding, placement, or leaving of material. It does not include a temporary accumulation of a limited quantity of a material used in or a waste generated or resulting from authorized activities, such as servicing, maintenance, or repair of Department of Defense (DoD) items, equipment, or facilities.

48 C.F.R. § 252.223-7006. Xavier's transfer operations, at most, involve "a temporary accumulation of a limited quantity of a material used in...authorized activities." They definitely do not involve "a non-transitory, semi-permanent or permanent holding, placement, or leaving of material." Accordingly, Xavier's proposed transfer operations do not involve "storage."

This conclusion is bolstered by the fact that the Army did not require Chattanooga Railcar Service ("CRS") to obtain a § 2692 waiver for the hazardous waste contained in the CRS railcars which have remained in "non-transitory" placement at the VAAP. Although your December 20, 2000 letter states that "the Army views CRS and its operation as not germane to Army/Xavier discussions," an agency's actions are quite relevant in determining how that agency interprets regulations. Accordingly, if OSC has concluded that CRS's activities do not constitute "storage," it cannot reasonably conclude that Xavier's proposed transfer operations include "storage."

However, even assuming that Xavier's transfer operations would involve "storage," a review of the regulations suggests there is no requirement that Xavier now seek approval for its operations from the Secretary of the Army. Specifically, ICI's prime facilities contract with the Army includes the clause at 48 C.F.R. § 223.7006, Prohibition on Storage and Disposal of Toxic and Hazardous Materials, as required by 48 C.F.R. § 223.71 (This clause is to be inserted in "contracts which require, may require, or permit contractor performance on a DoD installation."). This clause notes that contractors are prohibited from storing "non-DoD-owned toxic or hazardous materials on a DoD installation, except to the extent authorized by a statutory exception to 10 U.S.C. 2692 or as authorized by the Secretary of Defense of his designee." The clause thus establishes that there is more than one procedure for obtaining authorization to store

the covered materials. As such, the Army, as a designee of the Secretary of Defense, authorized Xavier's operations when it approved the FUA between ICI Americas and Xavier in 1996.

Xavier will be responding to other issues discussed in your December 20 and January 11 letters, including the nature of Xavier's real property interest and the status of its Facilities Use Agreement, by separate letters.

Xavier looks forward to working with OSC to resolve all issues concerning Xavier's proposed operations at the VAAP. Should you have any questions, please call me at (202) 626-5824.

Sincerely,

Bob Huffman

Robert K. Huffman

MILLER & CHEVALIER
CHARTERED

655 FIFTEENTH STREET, N.W., SUITE 900
WASHINGTON, D.C. 20005-5701
(202) 626-5800 FAX: (202) 628-0858

ROBERT K. HUFFMAN
(202) 626-5824
INTERNET: RHUFFMAN@MILCHEV.COM

February 20, 2001

**BY FACSIMILE**

Richard Murphy, Esquire
Attorney-Advisor
U.S. Army Operations Support Command
1 Rock Island Arsenal
Rock Island, IL 61299-6000

**Re: Xavier Chemical Company**

Dear Mr. Murphy:

We have received your letter dated February 8, 2001 setting forth the Munitions Armament Command (MAC) decision regarding how the Army-Xavier Chemical Company ("Xavier") relationship should proceed in the future with respect to the Volunteer Army Ammunition Plant ("VAAP").

Xavier appreciates the MAC's decision that Xavier is not required to obtain authorization under 10 U.S.C. § 2692 before proceeding with its Phase I (transferring) operations at the VAAP. Xavier also appreciates the MAC's decision not to require Xavier to enter into a lease with the Army Corps of Engineers before commencing the transferring operations. However, Xavier does not agree with the MAC's position that authorization under § 2692 and a lease with the Corps are required before Xavier can begin Phase II (terminalling) operations at the VAAP.

Notwithstanding its disagreement with these positions, and without waiving any of its existing rights, Xavier requests that the MAC proceed with the Report of Availability and supporting documentation to AMC in support of a lease with the Corps of Engineers on the same rent and timeframe as the current agreement. Xavier also wishes to notify you, again without conceding its position or waiving its rights, that it will shortly submit a § 2692 authorization request for the Phase II (terminalling) and Phase III (manufacturing) operations. In that connection, we would appreciate knowing whether there is a standard form that your office prefers for such requests.

Sincerely,

Bob Huffman

Robert K. Huffman

DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY MUNITIONS AND ARMAMENTS COMMAND
1 ROCK ISLAND ARSENAL
ROCK ISLAND IL 61299-5500

REPLY TO ATTENTION OF:

June 11, 2001

Office of the Commander

Mr. Ted Kowalski
Xavier Chemical Company
Suite 170
2555 Cumberland Parkway
Atlanta, Georgia 30339

Dear Mr. Kowalski:

As stated in our letter dated February 8, 2001, the U.S. Army Munitions and Armaments Command (MAC) agreed to permit your company to proceed with the transferring phase of your operations at Volunteer Army Ammunition Plant (VOAAP) upon completing the analysis of potential impacts under the National Environmental Policy Act (NEPA) and ensuring all required permits were obtained. The Army has now completed all legal requirements for your company to begin the transferring operation, including an analysis of impacts outlined during the NEPA process that resulted in no significant impacts being identified.

Your company's letter dated May 24, 2001 to the VOAAP Commander's Representative forwarded a copy of your air permit approved by the Chattanooga-Hamilton County Air Pollution Control Bureau. Your letter also indicated that your rail carrier had been issued a Hazardous Materials Registration Number by the U.S. Department of Transportation to transport sulfuric acid. Request that you provide the Commander's Representative a copy of the operator's certificate to move the hazardous material. In addition, continued proof of insurance will be necessary. As policy renewals are issued, request a copy be provided to my Commander's Representative.

This letter is your formal authorization to begin transferring operations. Operations will be conducted in accordance with your Right of Entry and are dependent upon compliance with the authorized terms and conditions of the

Printed On Recycled Paper

original facilities use agreement (FUA) with ICI, dated July 6, 1996. As outlined in Appendix B, your company is required to provide financial data in order to compute the Annual License fee.

On a separate issue, this Command received a fax from Mr. T.R. Andrake regarding the clearing of railcars from certain railroad tracks. The Army expects Xavier, or its rail agent, to coordinate with other railroad users to accommodate Xavier's need to move railcars in and out of VOAAP. In the event that Xavier and the authorized rail users are unable to reach agreement, the Commander's Representative will intervene to resolve disputes. Therefore, Xavier needs to contact Chattanooga Railcar Services directly before contacting the Commander's Representative.

If you have any questions, please contact my Commander's Representative, Mr. Bobby Holloway, at (423) 893-5121.

Sincerely,

Lawrence J. Sowa
Colonel, OS
Commanding

August 14, 2001

Website: www.willis.com

Direct Line: (423) 756-7821
Direct Fax: (423) 756-3623
E-mail: watson_sa@willis.com

Bobby Holloway
Volunteer Army Ammunition Plant
P.O. Box 23306
Chattanooga, TN 37422-3306

FAX: 1/423/893-9726

CERTIFIED 7099 3400 0016 0678 3779

RE: U.S. Army Pollution Legal Liability
Policy: PEC0004676
Premium Due - $ 14,234.

Dear Mr. Holloway:

This letter is to advise you that coverage for Xavier Chemical Company will be canceled for nonpayment of premium ten days from receipt of this fax.

Please fax confirmation to me that you have received this fax.

Thanking you in advance for your prompt attention to this matter.

Sincerely,

Sandra Watson
Account Manager

COPY

Willis

Willis of Tennessee, Inc.
Chattanooga Division
Lockbox
P.O. Box 905647
Charlotte, NC 28290-5647
(423) 756-7821

Xavier Chemical Company
c/o The US Army
P.O. Box 22608
Chattanooga, TX 37422-2608

# INVOICE

INVOICE DATE: 30-JUN-2001
INVOICE NO.: 0244624

August (?) last year

(expires 8/22/2001)

DUE DATE: 01-AUG-2001

| ACCOUNT | LOCATION | ACCOUNT NAME |
|---|---|---|
| 013214 | 003 | The US Army |

FOR QUESTIONS REGARDING THIS INVOICE, PLEASE CALL ONE OF THE FOLLOWING

SERVICER Sandra Watson PRODUCER T. Michael Langley, CIC

01 Transaction: Policy Renewal
Eff. Date : 01-AUG-2000
Policy : PEC0004678
Description: Pollution Legal Liability
Period : 01-AUG-2000 to 01-AUG-2003
Carrier : Greenwich Insurance Company
Installment: August 2001
Premium for Env Environmental Impairment $ 14,234.00

Total for Reference 01 $ 14,234.00

Second Annual Installment for ECS/Greenwich Insurance Co. Pollution Liability effective August 1, 2001/2002.

$ 14,234.00

PLEASE RETURN THIS COPY WITH YOUR PAYMENT

DEPARTMENT OF THE ARMY
HEADQUARTERS, U.S. ARMY MUNITIONS AND ARMAMENTS COMMAND
1 ROCK ISLAND ARSENAL
ROCK ISLAND IL 61299-5500

REPLY TO
ATTENTION OF:

Office of the Commander

17 AUG 2001

Mr. Ted Kowalski
Xavier Chemical Company
Suite 200
3020 Roswell Road NE
Marietta, Georgia 30062

Dear Mr. Kowalski:

This letter is to advise you that the Xavier Chemical Company's (Xavier) right to occupy premises and to conduct business on Volunteer Army Ammunition Plant (VOAAP) is terminated effective today. This termination is due to Xavier's failure to comply with the conditions set forth in the Army's December 30, 1998 letter to Xavier and other Army requirements, as conveyed repeatedly to Xavier personnel.

Pursuant to the December 30, 1998 letter, Xavier must comply with the terms and conditions of its facilities use agreement (FUA) with ICI Americas. However, Xavier failed to follow several provisions of its FUA. Each failing, in and of itself, provides sufficient and independent grounds to terminate Xavier's right to occupy premises and to conduct business on VOAAP. Specifically:

a. Xavier failed to pay its annual rental payment of $50,000 on August 1, 2001, as required by Paragraph 2 of its FUA. Xavier failed to do so despite receiving an invoice, dated July 5, 2001 and sent by certified mail, and a faxed invoice from the Army's representative, Tecumseh Professional Associated (Tecumseh), on July 31, 2001 after a personal request by you. Xavier is not entitled to a 30-day period to cure this delinquency as under paragraph 13 of its FUA Xavier is only entitled to one opportunity to cure in a 360 day period. Xavier used its "cure opportunity" for this current period when, on August 17, 2000, Xavier was notified that its rental check was returned for non-sufficient funds, and on September 14, 2000, finally tendered a good and sufficient funds payment.

b. Xavier failed to maintain pollution insurance in accordance with its FUA. Xavier is required by paragraph 8(a)(5) of its FUA to pay the premium on a pollution insurance policy approved by the Army within ten days of invoice. Army and ICI are also covered under this policy. Tecumseh included an insurance premium invoice of $14,234 in its July 5, 2001 certified letter to you. This invoice was also faxed to Xavier at your request on July 31, 2001. On August 14, 2001, the insurance carrier, Willis-Carroon of Tennessee, notified the Army that Xavier had not yet paid the required insurance premium. It was only in response to inquiries by Willis-Carroon that Xavier informed the Army it had no intention of renewing this policy. Rather, Xavier has apparently decided to obtain insurance on its own without notifying the Army as required by its FUA. Further, Xavier has not provided the Army with a copy of its new insurance policy so that the Army may review it to ensure there is adequate protection for the Army interests. Xavier's failure to provide this new policy to the Army for review and approval is also a violation of the FUA. In any case, Xavier has not provided the Army with a certificate of insurance or other proof that it actually has insurance. This failure also violated Xavier's FUA and is of particular concern as Xavier has apparently engaged in active operations on or about August 9, 2001.

c. Xavier has also violated the directions of the Army as provided in a letter dated June 11, 2001. This letter authorized Xavier to use certain facilities at VOAAP to support "transferring" operations. Xavier's violation of the requirements of the June 2001 letter and previous Army correspondence provides an additional, separate, and independent basis for termination of Xavier's right to conduct business at VOAAP. Specifically, Xavier has brought over 25 railcars on-site for non-"transferring" purposes. These cars have been on VOAAP for several days and are not being used to support Xavier's "transferring" operation. Xavier is only permitted to bring two to three railcars on-site for a sufficient period to off-load, expediently and safely, sulfuric acid into trucks. Xavier's current use is equivalent to storage or maintenance of railcars, an activity that is not permitted, as Xavier was informed in a November 14, 2000 letter from the Commander's Representative. Xavier's accumulation of railcars is so large that areas outside of those identified in its FUA are being used to store these railcars.

Xavier must cease all operations effective immediately, including its "transferring" operations, as the Army has no proof that Xavier has a current insurance policy, and vacate the premises. Xavier should immediately contact the Commander's Representative at VOAAP to coordinate removal of any Xavier-owned property remaining on VOAAP. Failure to removal Xavier-owned property within a timely manner may result in the Army seizing Xavier-owned property. Additionally, the Army reserves its right to re-license the facility or to assess rental fees against Xavier, as permitted under paragraph 13 of the FUA, if it fails to remove its property within 30 days.

Sincerely,

Walter J. Simmons
for
Todd E. Blose
Colonel, U.S. Army
Commanding

Copy Furnished:
Mr. T.R. Andrake, Xavier
Michael Graham, GSA - Atlanta