**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| XAVIER CHEMICAL COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 03-1823C<br>Judge Futey |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS IN PART AND FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to the Court's Order dated October 27, 2003, Plaintiff Xavier Chemical Company ("Xavier") respectfully submits this Opposition to Defendant's Motion to Dismiss In Part and for Partial Summary Judgment.

**STATEMENT OF THE CASE**

Xavier's Complaint ("Complaint") seeks restitution and non-overlapping reliance damages caused by Defendant's repudiation and breach of its obligations to Xavier under a Facilities Use Agreement ("FUA") regarding the sulfuric acid regeneration ("SAR") plant at the Volunteer Army Ammunition Plant ("VAAP") located in Chattanooga, Tennessee. The FUA was initially between Xavier and ICI Americas, Inc. ("ICI"), but the United States Army stepped into ICI's shoes (and Xavier attorned to the Army) when ICI ceased being the facilities contractor at the VAAP at the end of December 1998. Complaint at 1. Alternatively, the Army entered into an agreement with ICI on December 9, 1998 of which Xavier was an intended direct third-party beneficiary, and the Army subsequently breached and repudiated its obligations under that agreement. *Id.*

Count I of Xavier's Complaint asserts that the Army breached and repudiated its obligations to Xavier under the FUA by certain actions that it took and statements that it made during the period August 2000 through February 2001. Complaint, ¶¶ 44-46. Count II alleges that these same actions and statements constituted a breach and repudiation of the December 9, 1998 agreement between the Army and ICI of which Xavier was an intended direct third-party beneficiary. *Id.*, ¶¶ 47-49. Count III of Xavier's Complaint asserts that the Army's improper termination of Xavier's rights under the FUA in August 2001 constituted a breach of that Agreement. *Id.*, ¶¶ 50-52. Finally, Count IV states that the Army's improper termination breached the December 9, 1998 agreement between the Army and ICI. *Id.*, ¶¶ 53-55.

On October 3, 2003, Defendant moved to dismiss Counts I and II for failure to state a claim upon which relief may be granted because Xavier allegedly had no contractual right to use the VAAP for sulfuric acid terminalling and transfer activities. Defendant's Motion to Dismiss In Part and for Partial Summary Judgment at 1-2 ("Def. Mot."). Defendant also moved for summary judgment on Counts III and IV on the ground that the Army properly terminated Xavier for default in August 2001. *Id.*

## ARGUMENT

### I. THE STANDARDS FOR REVIEW

#### A. <u>Dismissal For Failure To State A Claim Under Rule 12(a) and (b)(6)</u>.

This Court's review of a complaint on a motion to dismiss under RCFC 12(b)(6) is a limited one, focusing on "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *PI Elecs. Corp. v. United States*, 55 Fed. Cl. 279, 284-85 (2003) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The Court follows "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Id.* at 285 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The Court must accept as true the facts alleged in the complaint, and must construe all reasonable inferences in favor of the non-movant. *Id.* (citations omitted).

### B. <u>Summary Judgment Under Rule 56</u>.

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing the motion, the court must view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc. et al.*, 477 U.S. 242, 255 (1986).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Summary judgment is not appropriate if the non-moving party can establish that it is able to prove evidence sufficient from which a jury could return a verdict in its favor. *Anderson*, 477 U.S at 249.

## II. COUNTS I AND II STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

### A. <u>The FUA Permitted Xavier to Conduct Terminalling And Transfer Operations At The VAAP.</u>

Counts I and II of Xavier's Complaint assert that the Army breached the FUA by refusing to provide Xavier rail access at the VAAP to conduct sulfuric acid terminalling and transferring operations. Complaint, ¶¶ 44-49. Defendant asserts that its failure to make the rail lines available did not breach the FUA because the FUA did not permit Xavier to terminal and transfer sulfuric acid that it did not produce at the VAAP. Def. Mot. at 11. Therefore, Defendant asserts, Counts I and II fail to state a claim upon which relief may be granted. *Id.* at 8-12.

Defendant is wrong. Paragraph 1 of the FUA grants Xavier a license to use "certain facilities at VAAP (identified in Appendix A and hereinafter called the "Facilities") for the use as a sulfuric acid plant." Def. App. at 25. Among the "Facilities" listed in Appendix A is Building 101, "Acid Storage and Related Loading Facilities," which is a terminalling, storage, and loading facility. Kowalski Decl., ¶ 2. The "Facilities" identified in Appendix A also include "the non-exclusive use of the railroad facilities at VAAP." Def. App. at 38-39. Accordingly, Xavier's rights under the FUA included the right to use Building 101 and the railroad lines leading to it.

Defendant appears to argue that the phrase "for the use as a sulfuric acid plant" in Paragraph 1 of the FUA means that Xavier can only use the "Facilities" identified in Appendix A as part of an ongoing sulfuric acid production operation. *See* Def. Mot. at 11. But nothing in that phrase required Xavier to use all of the Facilities before it could use any one of them. Nor is the term "sulfuric acid plant" inconsistent with the terminalling and transfer of sulfuric acid, particularly where such terminalling and transfer are preliminary to sulfuric acid production. Indeed, transferring was "the first of [Xavier's] operational phases under the FUA," (Complaint, ¶ 21), and Xavier so informed the Army. *See, e.g.,* Def. App. at 61. ("This serves as Xavier's notice providing the Army with the proper information regarding the materials that will be used on our facility for the *initial phase* of the sulfuric acid manufacturing plant.") (Emphasis added.); *see also*, Def. App. at 67. ("The transfer operation is the first phase in the startup of the sulfuric acid plant[;] [i]t will provide [Xavier] with the opportunity to begin seeding the commercial market prior to the completion of certain construction phases and the eventual manufacture of sulfuric acid.")

Defendant also argues that Paragraph 12(b) of the FUA precluded Xavier from bringing sulfuric acid onto the VAAP for terminalling and transferring activities. Def. Mot. at 9-11. Paragraph 12(b) states, in pertinent part, that Xavier

> shall not treat, dispose, bring, use or store at VAAP any Hazardous Substances (as defined by 42 U.S.C., Section 9601 (14) and implementing regulations. . . .) unless [Xavier] first obtains ICI's written consent and ICI's consent shall not be unreasonably withheld provided such Hazardous Substances are required for the operation and maintenance of the Facilities.

Def. App. at 32.

Defendant argues that this provision permitted the Army (as the successor to ICI) to deny Xavier permission to bring sulfuric acid (a hazardous substance under the applicable statute and regulations) onto the VAAP for terminalling and transfer. Def. Mot. at 9. Defendant asserts that the requirement not to unreasonably withhold its consent is inapplicable because the sulfuric acid in question was not necessary to operate or maintain a manufacturing plant. *Id.* But the requirement is broader than that. It states that ICI (*i.e.,* the Army) shall not reasonably withhold its consent provided that the sulfuric acid is "required for the operation and maintenance *of the Facilities.*" Def. App. at 32 (emphasis added). As shown above, the terminalling and loading facility (Building 101) was one of the "Facilities" identified in Appendix A to the FUA. Accordingly, Paragraph 12(b) of the FUA precluded the Army from unreasonably withholding its consent to Xavier's bringing sulfuric acid onto the VAAP for terminalling and transferring activities at Building 101.

Finally, Defendant argues that "Xavier's subcontract with ICI was . . . at its inception at least, subordinate to ICI's prime contract with the Army, [and] ICI's prime contract expressly provided, among other things, that subcontractors could not begin commercial activities at the VAAP until their planned activities were renewed and fully approved by the Army." Def. Mot.

at 10. However, the FUA ceased to be subject to ICI's prime contract when the latter terminated in December 1998. In any event, its application would have made no sense once the Army stepped into ICI's shoes under the FUA.

In conclusion, Xavier's Complaint asserts that terminalling and transferring activities were covered by the FUA (Complaint, ¶¶ 11, 21-23, and 27-28). The language of the FUA confirms this. Defendant's motion to dismiss Counts I and II should therefore be denied.

**B. <u>Counts I and II State A Claim of Repudiation</u>.**

Wholly apart from their allegations regarding access to the railroad lines, Counts I and II assert that the Army repudiated both the FUA and the December 9, 1998 Agreement. Complaint, ¶¶ 44-49. The Complaint asserts that on December 20, 2000, in response to "various telephone calls and letters" from Xavier's counsel, the Army sent Xavier's counsel a letter stating as follows:

> When ICI's prime contract expired on December 31, 1998, the Army attempted to enter into a direct contractual relationship with all ARMS tenants at [VAAP], including Xavier. On December 30, 1998, when the Army was unable to reach agreement with Xavier, the Army granted Xavier the authority to remain at [VAAP] on a month-to-month basis until an agreement suitable to all parties was signed, provided Xavier did not violate the terms and conditions of its FUA with ICI, and provided appropriate documentation was received as was specified to enable a full facility use approval by the Army.
>
> The Army views this month-to-month authorization as the extent of Xavier's real property interest. The FUA did not attorn to the Army, as the Army was not a party to the FUA and never authorized ICI to grant attornment. . . .

Complaint, ¶ 29. The Army's December 20 letter unequivocally denies that it has any contractual obligation to Xavier under the FUA, and further asserts that a month-to-month authorization is the extent of Xavier's interest. These statements constituted a repudiation of the Army's obligations to Xavier under the FUA. *See, e.g., 13 Richard A. Lord, Williston on*

*Contracts*, § 39.40 (4th ed. 1991) ("[A] statement by a party that he or she will not or cannot perform in accordance with the parties' agreement operates as a repudiation"). The Army again denied any contractual obligations to Xavier in its letter to Xavier's counsel dated February 8, 2001. *Id.*, ¶ 31. Counts I and II assert that these unequivocal statements constituted repudiations by Defendant of its obligations under the FUA and/or the December 9, 1998 agreement between the Army and ICI. Complaint, ¶¶ 44-49. Thus, wholly apart from whether Counts I and II state a claim for breach based on the Army's failure to clear the railroad tracks for Xavier's transferring and terminalling activities, those counts state a claim of repudiation.[1]

## III. THE GOVERNMENT IS NOT ENTITLED TO SUMMARY JUDGMENT ON COUNTS III AND IV

### A. Xavier Was Entitled To A Notice And Cure Period, And The Government's Failure To Provide Notice Constituted A Breach Of Both Agreements.

The FUA required the Government to provide Xavier with written notice of a rental payment default and a 30-day period in which to cure such default. FUA at ¶ 13, Def. App. at 34. This notice requirement provides that Xavier will be provided with only one written notice and one opportunity to cure late payments within one 360 day period. *Id.* Xavier was notified on August 17, 2000 that its rental check had been returned for non-sufficient funds and that it had 30 days in which to cure this problem (which it did). More than 360 days had elapsed from the prior cure notice when the Government sent the Notice of Termination on August 17, 2001. The Government was therefore required to give Xavier written notice and the opportunity to cure

---

[1] The Army also repudiated its obligations under the FUA and the December 9, 1998 agreement when it failed to respond to Xavier's counsel's August 28, 2000 letter which stated that "the Army has an obligation to affirm that it is not repudiating the Agreement and that it will comply with [the] contract, including the terms that relate to the scope and duration of Xavier's use of VAAP facilities." Complaint, ¶ 23.

its late payment in August 2001. The Government's failure to provide Xavier with requisite notice and cure periods before issuing the Notice of Termination on August 17, 2001 (which took effect that same day) constituted a breach of both the FUA and the December 9, 1998 agreement between the Army and ICI. Complaint, ¶¶ 50-55.

Moreover, even if less than 360 days had elapsed from the last cure notice, the Government still had no right to terminate Xavier's rights for failure to make the rental payment in August 2001. Pursuant to a December 18, 1998 agreement of the parties and amendment to the FUA, Xavier posted a Supplemental Surety Bond as a source of funds to satisfy annual rental payments due under the FUA. Kowalski Decl., ¶ 3. The December 18, 1998 agreement precluded the Army (as ICI's successor) from terminating Xavier for any delayed rental payment that could be satisfied by the bond. *Id.* Since the Supplemental Surety Bond would have satisfied the August 2001 payment, the termination was a breach of the agreement.

Defendant asserts that its termination of Xavier was proper because it "constructively advised" Xavier on December 1, 2000 that it was in material violation of the FUA because Xavier had brought railcars containing sulfuric acid onto the VAAP. Def. Mot. at 14. This argument fails for several reasons. First, the Army's December 1, 2000 letter to Xavier did not even reference the FUA, let alone assert that Xavier was in material breach of the FUA. Def. App. at 65. [2] Second, the FUA requires separate notices and separate cure opportunities for (1) a non-payment and (2) a breach of "any other condition." Def. App. at 34. Therefore, even if the December 1, 2000 letter regarding the tank cars had constituted a cure notice for "any other condition," a separate cure notice would still have been required regarding the August 2001

---

2 It is noteworthy in this regard that the Army's August 17, 2001 Termination Notice makes no mention of the December 1, 2000 letter or the presence of railcars containing sulfuric acid during that period.

rental payment. Thus, the Army's December 1, 2000 letter cannot justify the Army's failure to issue a cure notice for Xavier's nonpayment of its rental fee in August 2001.

Defendant asserts that its termination of Xavier was also justified by Xavier's alleged failure to pay for the pollution insurance coverage required by Paragraph 8.a(5) of the FUA. Def. Mot. at 15. In fact, Xavier had paid for insurance coverage, Kowalski Decl, ¶ 4, and thus no factual bases existed for terminating Xavier for default on this ground. Moreover, the requirement to maintain the insurance policy was an "other condition" of the FUA that required a separate cure notice from any cure notice given for the non-payment of rent. Def. App. at 34. Therefore, even if a failure to maintain insurance coverage had occurred less than 360 days after the cure notice for non-payment of the August 1, 2000 rent, it would not have justified the Army's termination of the FUA without further notice and opportunity to cure.

Finally, Defendant argues that terminating Xavier without further cure notice was justified by Xavier's alleged parking of acid-carrying railroad cars on the VAAP without the Army's permission in August 2001. Def. Mot. at 15. Again, however, this is an "other condition" that the Army was required to address with a cure notice unless that or another such "condition" had been the subject of a cure notice within the preceding 360 days. Def. App. at 34. Consequently, Defendant breached the FUA when it terminated Xavier for default based on the presence of the railcars without giving Xavier notice and an opportunity to cure this alleged breach.

### B. Even If Xavier Was In Default, Xavier's Nonperformance Was Excused By The Government's Prior Material Breach And Repudiation Of Both Agreements.

As Xavier demonstrated in Part II, *supra*, the Government had clearly repudiated the FUA and the December 9, 1998 agreement prior to the August 2001 Termination Notice. "One important consequence of repudiation, among other things, is that the injured party is discharged

of its performance obligations." *Alaska Pulp Corp., Inc. v. United States*, 48 Fed. Cl. 655, 659 (2001) (citing Restatement (Second) of Contracts § 253(2) (1981); *see also, 13 Richard A. Lord, Williston on Contracts*, § 39.40 (4th ed. 1991) (a repudiation will relieve the obligee from performance of its obligations). Thus, the Government's repudiation of both agreements excused Xavier's subsequent failure to pay the annual rental fee.

Like repudiation, a material breach "terminates the contract, relieving the injured party of its remaining duties of performance." *Alaska Pulp Corp.,* 48 Fed. Cl. at 659. The Government's failure to give Xavier access to the railroads prevented Xavier from conducting terminalling and transfer operations at the VAAP. Since the sole purpose of the agreements was to allow Xavier to operate the VAAP, the Government deprived Xavier of the benefit of its bargain. Thus, the Government's actions constituted a material breach of both of the agreements and Xavier was excused of its obligations under the agreements. The Government's subsequent termination for default was therefore not justified.

## CONCLUSION

For the reasons discussed above, Xavier respectfully requests the Court to deny Defendant's Motion to Dismiss In Part and for Partial Summary Judgment.

Respectfully submitted,

s/ Robert K. Huffman

Robert K. Huffman
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Washington, D.C. 20005
202/626-5824
202/628-0858 Facsimile

Counsel for Plaintiff

*Of Counsel:*
Lisanne E.S. Cottington
Alexa Zevitas
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Washington, D.C. 20005
202/626-5883
202/628-0858 Facsimile

Dated: November 14, 2003