# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| XAVIER CHEMICAL COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | Civil Action No. 03-1823C<br>Judge Futey |

## DECLARATION OF TED J. KOWALSKI, JR.

I, Ted J. Kowalski, Jr., declare and state as follows.

1. My address is 4820 Hickory Mill Drive, Smyrna, GA 30082. I am the President of Xavier Chemical Company.

2. Appendix A of Xavier's Facilities Use Agreement ("FUA") includes Building 101, "Acid Storage & Related Loading Facilities," as one of the facilities that Xavier has license to use. Building 101 is a terminalling, storage, and loading facility.

3. Pursuant to a December 18, 1998 agreement and amendment to the FUA between Xavier and ICI Americas, Inc. ("ICI"), Xavier posted a Supplemental Surety Bond as a source of funds to satisfy annual rental payments due under the FUA. A copy of the December 18, 1998 agreement and the Supplemental Surety Bond are attached to this Declaration. Xavier renewed the Supplemental Surety Bond in 2000 and 2001. The amount of the Supplemental Surety Bond was sufficient to satisfy Xavier's August 2001 rental payment.

4. During 2001, Xavier bought a new pollution insurance policy from ECS to replace the pollution insurance policy that Xavier had originally purchased from ECS through

Willis of Tennessee to satisfy the requirements of the FUA. It is my understanding that the new policy took effect upon the expiration of the old policy, and that there was no lapse in coverage.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746. Executed this 14th day of November, 2003.

Ted J. Kowalski, Jr.

# ICI Americas Inc.

Government Operations
6703 Bonny Oaks Drive
P.O. Box 22608
Chattanooga, TN 37422-2608
Telephone: 423-855-7256
Fax: 423-855-7270

December 18, 1998

VIA FACSIMILE

Mr. Ted Kowalski
Xavier Chemical Company
2555 Cumberland Parkway, Suite 170
Atlanta, GA 30339

Dear Mr. Kowalski,

In accordance with your letter dated December 15, 1998 and the Facilities Use Agreement between ICI Americas Inc. (ICI) and Xavier Chemical Company (XCC) dated July 6, 1996, the following terms and conditions will applied to the Facilities Use Agreement:

1. ICI acknowledges receipt of three checks by XCC totaling $65,892.96 on November 30, 1998 and December 3, 1998 for outstanding payments required under the terms of the Facilities Use Agreement.

2. XCC will post no later than January 15, 1999, a supplemental Security Bond in the amount of $350,000.00 in addition to the $6,700,000.00 Construction Bond with Earth Tech, Inc. that is currently in place. This Security Bond will provide additional monetary security in the event of any default under the Facilities Use Agreement and will replace the Security Deposit stated in Article 5 of the Facilities Use Agreement.

   $ 70,000.00 — TK 12/18/98 CSS

3. ICI will return ~~$60,000.00~~ of the $120,000.00 Security Deposit to XCC. The remaining ~~$60,000.00~~ will be kept by ICI and used to pay the remaining maintenance obligations, late fees or other charges due or incurred under the Facilities Use Agreement prior to December 31, 1998.

   $ 50,000.00 TK 12/18/98 12/18/98 CSS

In consideration for the items listed in paragraph 1, 2, and 3 of this letter (assuming the checks described in paragraph 1 are honored by XCC's bank), ICI will rescind the Notice of Termination that was sent to XCC on October 13, 1998, and ICI acknowledges that XCC has cured all of the default items that were outlined in the Notice of Default sent to XCC dated September 2, 1998.

~~5. XCC releases ICI from any and all claims and responsibilities of every kind whatsoever, arising on or before December 31, 1998, except as expressly provided herein.~~ TK 12/18/98 CSS

If XCC is in agreement to the above terms and conditions please acknowledge below and return to ICI.

Sincerely,

[signature]

Charles S. Saunders
Vice President - Government Operations

ACKNOWLEDGEMENT

[signature]

Ted J. Kowalski, Jr.
President
Xavier Chemical Company

# XAVIER CHEMICAL COMPANY

January 25, 1999

Mr.Charles Saunders
V.P. Government Operations
6703 Bonny Oaks Drive
Chattanooga, Tennessee 37422
Mail: P.O. Box 22608
Chattanooga, Tennessee 37422-2608

Dear Sid:

As we discussed on January 12, 1999 we are making the changes to the Surety Bond (consistent with our December 18, 1998 amendment to the Facilities Use Agreement) following your review of this documentation. In addition, due to the necessity of additional time for the surety to provide an amended Bond, we mutually agreed on 1/12/99 to extend the deadline for posting of the Bond. Under item #2 of the December 18,1998 Amendment to the Facilities Use Agreement, we have agreed to amend this deadline for posting the Bond to Friday, January 29, 1999.

Please acknowledge below ICI's agreement to the above revision to the terms and conditions of the December 18, 1998 Amendment to the Facilities Use Agreement and return to XCC.

Sincerely,

Ted J. Kowalski, Jr.
President

ACKNOWLEDGEMENT

Charles S. Saunders
Vice President – Government Operations
ICI Americas Inc.

2470 Windy Hill Road, Suite 300 • Marietta, Georgia 30067
Tel: 770-933-5356 Fax: 770-618-3043

# Condor Insurance Limited

**SURETY BOND**

US $350,000.00

*(Three Hundred Fifty Thousand U.S. Dollars)*

TO: ICI Americas, Inc.,

In consideration for the security deposit referred to in the Facility Use Agreement, Article 5a, entered into between yourself and Xavier Chemicals Company., on the 6th day of July, 1996 and amended on the 18th day of December, 1998., to be alternatively secured by the provision of a surety bond as follows;

**WE DECLARE**

**KNOW ALL MEN BY THESE PRESENTS:**

that Xavier Chemical Company as Principal and Condor Insurance Limited as Surety, authorized to this Payment Surety Bond. The surety is held firmly bound unto you as Obligee, to which payment will be made, we bind ourselves, our heirs, executors, administrators and successors, jointly and severally, firmly by these presents, subject to the terms and conditions hereinafter following in the Surety Bond.

**WHEREAS**, the Principal has requested of the Surety that it obligate itself as Surety with respect to the payment of a sum not to exceed $350,000.00 (Three Hundred Fifty Thousand U.S. Dollars) and the Surety is willing to so obligate itself, subject to the terms and conditions hereafter set forth, the payment of premium and other considerations.

**NOW THEREFORE**, the condition of this obligation is such that if the above named Principal shall pay the Obligee in accordance with the terms of the Facility Use Agreement. This bond will provide additional monetary security in the event of any default under the Facility Use Agreement and replaces the security deposit stated in Article 5 thereof. Upon payment or performance of the obligation to ICI by the Principal the effective dates of this Surety Bond, and the obligation hereunder shall be null and void, otherwise it shall be irrevocable and remain in full force and effect until such payment or performance is made, further subject, however, to the following provisions, terms and conditions:

1. **Definitions**

a) *"Default"* shall mean failure by the Principal to (i) make payment or otherwise perform an obligation under the Facility Use Agreement when due to the Obligee on the Agreement, and (ii) cure such nonpayment or nonperformance on or before the date which is thirty (30) days after the date upon which such payment or performance was due.

b) *"Limit of Liability"* shall mean the amount hereinabove designated as such, which shall be the Surety's maximum liability under this Surety Bond.

c) *"Loss"* shall mean any amount due and payable under the Facilities Use Agreement which is in default, including interest to be calculated at the rate specified in the Facility Use Agreement, from the day interest began to accrue until the day on which the Surety pays such Loss thereunder in accordance with Section 8.

**2. Default**

Upon the occurrence of Default, the Obligee shall be entitled to make a claim under this Surety Bond in respect of the due amount arising by reason of such Default and the Surety shall pay to the Obligee in due course and in accordance with the following points:

**2.1 Obligee's Right in Case of Default**

In the event of the Principal failing to pay the Obligee any amount or perform as per the above mentioned Facility Use Agreement, which said Agreement is attached hereto and made a part hereof, the Surety shall undertake irrevocably and unconditionally, without regard to the legal validity of the the Facility Use Agreement, to indemnify the Obligee for One Hundred Percent (100%) of the amount due the Obligee and interest up to the maximum amount of Three Hundred Fifty Thousand United States Dollars (US $350,000.00) and in addition, all costs, interest and damages arising from the Default by the Principal to pay or perform.

**2.2 Surety's Right in Case of Default**

Surety shall have the option to cure a Default under the Facility Use Agreement by paying to the Obligee unpaid principal, interest and other related expenses within sixty (60) days of its receipt of written notice at its offices of Default thereunder in accordance with the provisions of the Facility Use Agreement, including any payment thereafter due, if such Agreement is subject to acceleration by the terms thereof. However, should the Obligor fail to pay the Obligee within the sixty (60) days, plus all expenses related to the Default, then the Surety shall have the option to exercise the rights of acceleration and seizure of any and all pledged assets for the total debt of the Facility Use Agreement as contemplated in point 2.1.

**3. Assignment**

The present document is not transferable, except for Obligee upon written notice.

**4. Payment of Premium and Cancellation**

The premium hereunder shall be payable upon the execution and delivery of this Surety Bond and shall be non-refundable. This Surety Bond is null and void "ab initio" in the event of non-payment of premium, which premium is payable by separate agreement.

**5. Notice of Default**

The Surety hereby accepts that the claim made by the Obligee containing their confirmation that payment has not been effected by the Principal will be considered as sufficient proof of Default. Upon the expiration of the first three (3) months of the Surety Bond and after the Principal's Default, a written notice thereof shall be given to the Surety by the Obligee no later than sixty (60) days after Default unless the Surety agrees in writing to extend the time for filing of a claim with respect to such Default. Notice of Default shall be a signed affidavit stating the date payment or performance was due under the Facility Use Agreement, the damage or injury resulting from nonperformance or nonpayment, the amount representing interest accruing each day. All notices, applications, demands and requests provided for in this Surety bond shall be in writing and addressed to:

THE SURETY AT:

Condor Insurance Limited
c/o Lipsitz, Nassau, Schwartz etc.
1100 Fifth Avenue
Pittsburgh, Pa 15219

THE OBLIGEE AT:

ICI Americas, Inc.
Volunteer Army Ammunition Plant
Chattanooga, TN 37244

THE OBLIGOR AT:

Xavier Chemicals Inc.
2555 Cumberland Parkway, Ste. 170
Atlanta, GA 30339
(770) 433-9913 telephone
(770) 433-0279 telefax

**6. SERVICE**

The Obligee shall exercise normal prudent business practice in effecting enforcement of obligations under the Facility Use Agreement. This Surety bond is rendered void upon the discovery of fraud or misrepresentation on the part of the Principal and/or Obligee or their representatives in the negotiation and/or consummation of the Facility Use Agreement and/or documents which constitute any part of the Facility Use Agreement between the Obligee and Principal.

**7. Subrogation**

Upon and to the extent the Surety has made payment of Loss under this Surety Bond, the Surety shall be subrogated to all of the Obligee's titles, rights and actions against the Principal and any other person or organization liable to Obligee under the terms of the defaulted Facility Use Agreement and in connection with the payment made by other parties, including insurers. At the request of the Surety, the Obligee shall execute and deliver all instruments and papers and do whatever else may be necessary to transfer, assign and secure such rights and the Obligee shall do nothing to prejudice such rights. The execution by the Obligee of a release, satisfaction or waiver of the right to collect the unpaid balance of the Facility Use Agreement shall equally release the Surety from any further obligation under this Surety Bond. Any specific assets referenced by addendum to this Surety Document held by Obligee shall be immediately released by the Obligee or the attorney charged with the responsibility of acting as depository of this Surety Agreement.

**8. Proof of Payment of Loss**

In accordance with Section 5, Notice of Default shall constitute proof of loss hereunder. The Surety shall pay Loss hereunder not later than sixty (60) days after the giving of notice of Default and after the notification by the Obligee in writing to the Surety's offices. Loss shall be paid at the address of the Obligee set forth in Section 5.

**9. Access to Records**

The Surety may, in case of Default, have the right to examine or copy any of the Principal's books, records, accounts, documentation or other information in the possession or under the control of the Principal relating to or connected with the subject of the Surety.

**10. Choice of Law**

It is understood and agreed that in the event of any claim whatsoever under this Surety Bond, payment shall be made to the Obligee in accordance with Section 5. Any dispute will be resolved by arbitration under the State of Georgia's jurisdiction and decided upon according to the laws of the United States. The place of performance and jurisdiction is the State of Georgia, United States of America, but the Obligee has the right to take legal action against the

reinsurer in the jurisdiction where the reinsurers are domiciled or any other competent jurisdiction

Any payment made by the Reinsurer under this clause shall relieve the Reinsurer of liability under the Reinsurance agreements to the extent of such payment. In no event shall the Reinsurer be subject to duplicate liability.

This clause applies only to the perils provided in this Bond

11. **Other Coverages**

Any obligation of the Surety hereunder shall be in excess of any valid Bond, Insurance or other indemnity covering Loss hereunder.

12. **Effective Date of Surety Bond**

This Surety Bond is effective as of the 7th day of December 1998 and shall expire at midnight on the 7th day of December 1999.

**SIGNED, SEALED AND DATED** the 25th day of January, 1999

Principal

Ted Kowalski, Jr
Xavier Chemicals Inc.

SURETY

Harvey Miller
Title: Attorney-in-Fact

**Seal of the Corporation**

OBLIGEE

ICI Americas, Inc.